Solomon Stallings, plaintiff in error, vs. Riley J. Johnson, defendant in error.

About the time a note fell due, the holder went to the maker, and, after conversing with him about the note, entered into an agreement with him, by which, in consideration of a promise, of 8 per cent. of usury, he was to wait

with him twelve months on the note. The maker was then able to pay the note, and would have paid it, if pressed for its payment. Afterwards, he dealt in cotton, and broke. The endorser knew nothing of this agreement. *Held*, That he was discharged.

Complaint, in Floyd Superior Court. Tried before Judge HAMMOND, February Term, 1859.

This was action by Solomon Stallings, endorsee, against A. T. Harden maker, and Riley J. Johnson endorser, of a promissory note for $1,000, dated 3d June, 1854, and payable 25th December, 1855. The note was signed by Harden, as maker, and endorsed by Johnson, who was the payee.

It appeared that about the time the note fell due, Stallings, then the holder and endorsee, agreed with Harden, the maker, that if he would pay him 8 per cent. over and above the legal interest, that he would not bring suit on said note for twelve months; and Harden gave his note to Stallings for the sum of $80 00, for, and on account of said usurious interest. Johnson, the endorser, had no knowledge of this arrangement. That at this time Harden was solvent and would have paid the note, if Stallings had not agreed to wait; and that he has since become insolvent; that the $80 note for usury or indulgence was still unpaid. This is the substance of the testimony of Harden, who was introduced and sworn in the case. It further appeared that plaintiff resided in North Carolina at the time the indulgence was given; that he left the State of Georgia immediately after the contract, and did not return until the end of the year, and had no agent in this State. That the failure of Harden was produced by losses on cotton, purchased by him in May after the indulgence was extended to him. Stallings' son-in-law living in Floyd county, Ga., sometimes acted as his agent.

Plaintiff's counsel requested the Court to charge the jury, that unless Johnson notified Stallings to sue, he could not avail himself of the agreement between Harden and Stallings to defeat a recovery in this case. That if they believed the

agreement was wholly usurious, Johnson was not released as endorser; that this defence was not available unless the contract between Stallings and Harden was a valid one.   That an agreement not to sue for a limited time, does not discharge the endorser, as such agreement is not binding, and suit may nevertheless be commenced at any time, and if Stallings might have brought suit at any time, and did not, it was simply forbearance to sue, and did not discharge the defendant, as endorser.   Which charge the Court refused to give, but charged " that if Stallings entered into an agreement to wait with Harden twelve months and did wait, and Harden in the meantime became insolvent, and by reason of the delay, the endorser was injured, then he was released, and they should find for defendant."

To which charge and refusal to charge plaintiff excepted. The jury found for the plaintiff against Harden, but in favor of Johnson, the endorser, and plaintiff assigns as error, the charge and refusal to charge above, excepted to.

F. C. SHOPSHIRE, for plaintiff in error.

D. R. MITCHELL ; and W. AKIN, *contra*.

*By the Court.*—BENNING J. delivering the opinion.

The questions in this case may all be reduced to this one, was the charge right?   The charge was as follows : " that if Stallings entered into an agreement, to wait with Harden twelve months, and did wait, and Harden, in the meantime, became insolvent, and by reason of the delay, the endorser, was injured, then he was released."

This charge, of course had reference to the agreement shown by the evidence.   The agreement shown by the evidence was, in substance as follows; Stallings, the holder of the note, promised Harden, to wait with him twelve months for the money due on the note ; and Harden promised Stal-

lings, to pay him that money, at the end of twelve months, and also to pay him eighty dollars of usury.   In this agreement, the promise on the one side, was the consideration for the promise on the other.   Did this agreement, discharge Johnson, the endorser.   If it did, it is clear, that the charge was right.

If the agreement was a *binding* one, it did discharge Johnson.   This all admit.

Was it a binding one ?

The agreement being one in which, the promise on the one side, was the consideration fort he promise on the other, was binding if there was, in the promise on the one side, any thing of value to the party on the other side.   If the consideration for a contract, is of any value at all, the consideration is sufficient, to support the contract.   This is, certainly, true, as a general principle.

Stallings's promise to Harden, was, to give him twelve months within which, to pay the note.   Such indulgence was, certainly, a thing of value to Harden.   There was, then, in Stallings's promise to Harden, something of value to Harden.   Therefore, that promise was a sufficient consideration to Harden, for his promise to Stallings.

Harden's promise to Stallings, was, to do two things at the end of twelve months; one to pay Stallings the note; the other, to pay him $80, over and above the note.

Was there any thing of value to Stallings, on the part of this promise, by which, Harden engaged to pay him the note at the end of twelve months?   In other words, is the promise of the endorser of a note, to the holder,·to pay him the note, a thing of any value to him ?   Does it add anything, to the promise already existing in the note itself ?   There certainly are cases in which, such a promise is of value, and of great value to the holder of the note.   One of these is the case in which, the endorser has been discharged for want of notice of the dishonor of the note.   In that case, such a promise of the endorser, if made with a knowledge of his discharge,

revives his liability. (*Byles on Bills*, 223, 224.) Another, is the case in which, the endorser has been discharged, by time given to the maker. In that case, also, such a promise of the endorser, if made with a knowledge of his discharge, will revive his liability. *Byles on Bills*, 187. Suppose, then, that Stallings had given Harden indulgence, by some contract, unquestionably, binding, and, that, thereby, Johnson, the endorser, had become completely discharged, and yet that Johnson had, afterwards, with a knowledge of his discharge, promised Stallings, to pay the note. This promise would have restored his liability as endorser. Suppose further, in this case, that Stallings, in consideration of this promise by Johnson, had, on his part, promised Johnson something; as, to give him time on the note, would not that be a promise founded on a valuable consideration? Surely it would. These two, then, are cases in which, such a promise would be of great value. Another case is that in which, the statute of limitations is running against the contract. In that case the promise takes the contract out of the statute, and relieves it from all impression which, the statute may have made upon it. And, if the promise be, to pay at a future day, the statute will not recommence running, until that day comes.

To this last class of cases, belong the case in hand. For in it, the promise by Harden, was made at or about the time when the note fell due, and was a promise to pay the note, at the end of twelve months, from the promise. Such a promise relieved the note, for a considerable time, from the operation of the statute of limitations. That was a thing of some value, to Stallings.

In the utmost strictness, then, the promise was of some value to Stallings, and that being so, the promise was, according to the general principle aforesaid, a sufficient consideration to support the counter promise of Stallings. If so, then the contract to give time, was a binding contract, unless there is something in the case, to take it out of that general principle.

So much for the argument from the general principle, that if the consideration is of any value, it is sufficient to support the contract; the result is, the same, I think, if we argue from decided cases.

In " *Samuell vs. Howarth,* (3 *Mer.* 272,") " A. guarantied the payment of any goods, to be supplied by B. to C.," " C., having accepted bills for the amount of the goods delivered, B. permitted him, to renew them when payable, without any communication to A. on the subject of such renewal." " It was held, by Lord Eldon," " that A. was discharged from his guaranty, by virtue of the rule, that a creditor giving further time to the principal debtor, without the consent of the surety, releases the surety." 2 *White & Tudor's, Eq. Cas.,* 358. This is, saying, that if the creditor takes a new bill from the principal debtor, the act binds him, and, he discharges the surety. But what is a new bill? It is *pro hac vice,* only a promise in writing, to pay the old debt at a new day; and, there can be no more consideration to the creditor, to induce him to take such a promise in writing than there is to induce him to take such a promise not in writing. Therefore, if it be true, that there is a sufficient consideration to him for taking the promise in writing, it must be equally true, that there, is a sufficient consideration to him for taking the promise not in writing.

*Gould vs. Robson,* (8 *East,* 575.) was stronger. There, not even the old bill was given up. See, also, the cases referred to by the Court, in *English vs. Darly,* 2 *Bos. & Pul.* 61.

So much for what, decided cases teach.

Thus then, it seems, that whether we go by these decided cases, or, by the general principle, that the consideration, if of any value at all, is sufficient to support the contract, we must conclude, that this agreement for indulgence to Harden was binding.

What is there to interfere with a conclusion thus, drawn from both principle and authority? Is there any decision,

expressly and consciously, saying, that such a promise as this of Harden's, is a thing of no value, and therefore, that it is a thing, which does not suffice to be the consideration of a counter promise? I know of none. We may I know, frequently, find, dicta, and less frequently, decisions, to the effect, that a contract for time, between the holder and the principal, must, to discharge the surety, be on a sufficient consideration. But I can find no case in which, it was decided, that a promise by the debtor, to pay at a future day, was of no value to the creditor, and *therefore*, that it was a thing not sufficient to support a promise of indulgence made by the creditor. There may be cases in which it was silently *assumed*, apparently without thought or examination, that such a promise by the debtor, was not sufficient, as a consideration, for a promise by the creditor, to give time, but if there are, they cannot have a great deal of weight as authority.

The argument against the conclusion, aforesaid was confined, exclusively, to the effect which the other branch of the promise, had on the agreement; viz, the branch of the promise by which, Harden agreed to pay Stallings $80 over and above the amount of the note, for the indulgence. That argument assumed, that Harden's engagement to pay this sum, was the sole consideration to Stallings, for his promise of indulgence, and, having assumed this, the argument insisted, that as the engagement to pay this sum was usurious; it was void and the promise of indulgence founded on it, had also to be void. This was the sole argument. There were read, in support of it, some American cases; (2 *White & Tudor, Eq. Cas.* 381,) but in all of those cases that are analogous to the present, it will be found, I think, that they make this same assumption; viz, that the debtor's engagement to pay usury, is the *sole* consideration to the creditor, for his promise of indulgence. The argument then, and the decisions, are, it is manifest, not a full answer to the question involved, which is, whether a creditor's promise to indulge, founded on the debtor's promise

to do *two* things, at a future day; one, to pay the debt; the other, to pay usury on the debt, is binding ?    This argument and these decisions, leave out of view, one of the elements in the question; viz. the promise to pay the *debt*.    Hence, they are, in strictness, to be considered as not meeting the question.

The only English case at all like the present, which was cited, was that of *Philpot vs. Breant*, ( 4 *Bin*. 717.)    There, the promise on which, the engagement to indulge, was founded, was a promise made by the person who was executrix of the acceptor, and was a promise to pay the debt, " out of her private income."    Such a promise was, every way, valueless to the creditor. It was a promise made her, not as executrix, but in her private capacity.    Hence it could be of no value, by way of reviving the debt, or taking it out of the statute of limitations.    It was a promise to pay a debt of the estate, out of her private income.    And such a promise is worthless, by being within the statute of frauds.    Besides, the question, whether the promise might not be good, to take the debt out of the operation of the statute of limitations, was not made.

But although it may be true, that the engagement of Harden to pay usury to Stallings, was not the entire consideration for the latter's promise of indulgence, may it not be also true, that the effect of that engagement, was such, as to destroy the value of the other part of the consideration, the part consisting of Harden's engagement to pay the old note ?

Is it not true, that if, even a part of the consideration of a contract, be illegal, the contract is void ?

We find it frequently said, by Judges and law writers, that if a part of the consideration of a contract, be *illegal* the contract is void ; and the reason given, is, that every part of a consideration, is to be presumed, to have had some effect, in inducing the party recipient of the consideration, to enter into the contract.    (1 *Smith's Lead. Cases*, 284, 285.)    Now this reason applied, equally, to cases in which a part of the

consideration *fails* for any other cause, than illegality; and yet, we find, that it is not sufficient to induce Courts to hold the contract, void, in those cases. The most that a partial failure of consideration in the cases, can do, is, to put it in the power of the party to be benefitted by the consideration, to repudiate the contract or not, *as he pleases.* And this, I strongly incline to think, is as much as a partial failure of the consideration ought to do, in cases in which, that failure is owing to illegality in a part of the consideration. If the party to be benefited by the consideration, is willing to abide by the contract, although a part of the consideration fails for illegality or any other cause, it is evidence, that this part was no inducement to him, to enter into the contract— that the good part was the sole inducement to him to enter into the contract; and the case becomes the same that it would have been, if the illegal part of the consideration had never been put into the contract. If this party, to the contract, then, is willing to abide by it why should we not uphold the contract? I can see no reason why we should not. Certainly upholding the contract will not be anything of which, the other party can complain.

I incline, to think, then, that the rule is general that where there is a partial failure of the consideration, the contract is nevertheless valid, if the party to receive the consideration, is still willing to hold on to the contract; and that the case in which, the partial failure, of the consideration is owing to illegality in a part of the consideration, is no exception to the rule.

On this subject, there, is, as it seems to me, much conflict, apparent or real in the English cases. Some of them, seem to say, that, if there is illegality in a part of the consideration, the contract is void; others of them seem to say the opposite. Of the former class are *Featherstone vs. Hutchinson, (Cro. Eliz.* 199,) and the cases which follow it. Although, really, the part of the consideration that was illegal in that case, might be taken as the *whole* consideration, the

other part being merely *nominal*—the payment of two shillings. Of the latter class, are *Colston and Carre, Crupps and Golding,* (1 *Vin. Abr.,* 332 ;) *Gaskill vs. King,* (11 *East.* 168 ;) *Wegg vs. Shuttleworth,* (13 *East,* 87 ;) *How vs. Syrge,* (15 *East,* 440,) and other cases. And some general principle, like that aforesaid, is needed, to show us which of these cases, to reject, if, indeed, we cannot, by that principle, reconcile all of them so that we shall be relieved from having to reject any.

Assuming it as true, that the rule aforesaid is a general one, extending to the case of a partial failure of consideration for illegality, the question is, whether Stallings has elected to repudiate the contract on the ground, that a part of the consideration on which he acted, was illegal ? And we do not find that he has. He still holds on to the note given for the $80, of usury. He has made no offer to return it—given no notice to Harden, or to any one, that he considers the contract at an end. On the contrary, the evidence is, that Harden still expects to pay that note. He says he will pay it if he ever gets able to do so. And doubtless Stallings is cherishing the hope and expectation that it will be paid, at some day.

We are not prepared to say, then, that the illegality of a part of the consideration is, of itself, sufficient in any case, to render the contract void. But if so sufficient in some cases, it cannot be, that this is one of the cases ; because, we have a statute which make contracts involving usury, void, only for the usury, but good for the rest—good for the principal. *Cobb,* 393. By this statute, then, so much only of the contract for indulgence, as involved usury, was void ; the rest was good.

Then the usurious part of the consideration, did not vitiate the other part of it, and that part was of itself, of some value as we have seen. It would follows then, that, if a consideration was all that was needed, to make the promise of indulgence binding, a consideration existed.

But was a consideration needed ? The later cases say so ;

the earlier do not; and these were nearer to the time of our adoption of the law of England. In *Anderson vs. George*, (1757,) there was no consideration for the indulgence given, and Lord Mansfield said, "here is an actual credit given for eight days, and the loss must fall on the plaintiff." (*Note g. to Chitty on Bills*, 441.) In *Tindal vs. Brown*, (1 *T. R.* 167.) Buller J. said; "as to giving time, the holder does it at his peril; and that circumstance alone, would be sufficient to decide this case. For in no case has it been determined, that the endorser is liable after the holder of the note has given time to the maker."

We are not prepared to say, whether there may not be cases in which consideration will be necessary, according to the teaching of. the later decisions; but we do think, that there may be cases in which, the want of a consideration will not prevent the agreement from so operating as to discharge the surety. For example, suppose when the note falls due, the holder goes to the maker, who has the money with which to pay it, and, instead of requiring him to pay it, agrees with him, on the promise of usury, to postpone the day of payment; and, that afterwards, the maker gambles in cotton and loses this money and all else of his property, would not this agreement, even admitting it to be one destitute of a sufficient consideration, be a thing to discharge the endorser? We think it would. And why? Because, such an agreement by the holder, would be a violation of his duty to the endorser, and would operate to the endorser's prejudice, to the full amount of the note. What is the holder's duty? By the old law, (the common law,) his duty is, to demand payment of the note, from the maker, at its maturity; and, in case of his failure to pay it, to give notice of the failure, to the endorser. Much more, must it be his duty, to abstain, at the maturity of the note, from any positive bargain with the maker then able to pay it, not to require its payment but to wait with him, to a future day for its payment. So much of this old law, as requires the holder to make demand of payment,

Stallings vs. Johnson.

and, to give notice of nonpayment, was repealed by the Act of 1826, (*Pr.* 462.) But no more of it, than this, was repealed. Therefore, the part which requires the holder to abstain from making a positive bargain, at the maturity of the note, not to require payment of it, still remains in force. Consequently, it is still the duty of the holder not to make any such bargain. The matter may be stated another way. The undertaking of the endorser, is, to pay the note when due, provided, the maker does not pay it, and, provided, the holder does nothing to relieve the maker from his duty so to pay it. This, and, no more than this, is the undertaking, ever since the Act of 1826. This being the endorser's undertaking, it follows, that there is *no breach* of his undertaking, in the case in which, the holder does any thing at the maturity of the note, to relieve the maker from his duty to pay it.

It is manifest, that such a bargain for time, would be to the prejudice of the endorser, if he were still held bound, and to the full extent of the debt—for, but for the bargain, the note would have beeen paid, by the maker, and that would have prevented the endorser from having to pay it.

This then is a case in which, we think, that the bargain for time, would discharge the endorser, even although, it might be true, that the consideration for the bargain, would not be sufficient.

And the case in hand, seems to be this very case. For according to the evidence, Stallings the holder, went to Johnson, the maker, "about the time," at which the note fell due, "and after conversing about the note," "entered into an agreement," with Harden, that, if he, Harden would "pay him, Stallings, 8 per cent. over and above the lawful interest he, (Stallings,) would not bring suit on said note, until the expiration of twelve months." Harden was solvent, "and would have paid the note," "when it fell due, if he had been pressed for payment." "Most of the cotton the losses on which, caused the failure of Harden, "was purchased" "after the contract for time," had been made. Such, the evi-

dence shows to have been, the present case. We therefore, think that the agreement discharged the endorser, even if the agreement is to be taken as one founded on a consideration which was insufficient.

Upon the whole then, we think, that the charge of the Court was right, which was as before stated, " that if Stallings entered into an agreement to wait with Harden, twelve months, and did wait, and Harden, in the mean time, became insolvent, and by reason of the delay, the endorser was injured, then, he was released." This charge, the evidence considered, we think was right.

Judgment affirmed.