## GEORGIA IRON AND COAL COMPANY v. OCEAN ACCIDENT AND GUARANTEE CORPORATION.

1. The contract sued on was ambiguous, and the court erred in excluding the evidence sought to be introduced by the plaintiff on the ground that the contract was unambiguous, and in granting a nonsuit.

2. "When the court has erroneously ruled out evidence without which the plaintiff could not possibly recover, his failure to go on and prove other essential facts will not cure the error and sanctify a judgment of nonsuit."

3. The suit was on a liquidated demand, and an amendment to the petition seeking to recover interest thereon at seven per cent. per annum was properly allowed.

Argued November 11, 1908.—Decided October 1. 1909.

Action upon insurance policy. Before Judge Pendleton. Fulton superior court. March 10, 1908.

*Anderson, Felder, Rountree & Wilson,* for plaintiff.

*Rosser & Brandon,* for defendant.

FISH, C. J. The Georgia Iron and Coal Company, hereinafter called the Coal Company, brought an action against the Ocean Accident and Guarantee Corporation, hereinafter called the Corporation, the substance of the petition being as follows: The defendant, which is a London corporation, is represented by an agent in the city of Atlanta, Ga., and is indebted to petitioner in the sum of $5,000, because of the following facts: On Oct. 10, 1901, defendant entered into a contract of insurance with petitioner, whereby it agreed to pay petitioner, in respect to any loss from common law or statutory liability, for damages on account of bodily injuries accidentally suffered within the period of the contract by any employee of petitioner, upon certain conditions set out, the full amount of such sum as petitioner should have to pay upon judgment recovered against it at the final termination of any litigation which might arise on account of such bodily injuries; the total recovery under the contract in respect to any one person being limited to $5,000. Under the contract, petitioner was insured against damages and recovery from it for any bodily injuries sustained by any person working upon its premises in the capacity of surface ore or underground miners. Among the persons so employed was one John Simonds. On Dec. 16, 1901, while the contract of insurance was in force, John Simonds accidentally suffered bodily injuries upon the premises of petitioner while working in connection with petitioner's business. Thereafter he brought suit against petitioner, of which notice was given to the Corporation, as required by the provisions of the policy, in which a verdict and judgment were rendered against it for $4,375, which judgment bore interest from date at seven per cent. per annum. This litigation cost the amount of $492.15, which, on Dec. 31, 1904, was paid by petitioner. The judgment was paid by it on Dec. 30, 1904. On account of such damages recovered by Simonds petitioner

paid $5,037.30, and as a result thereof the defendant is indebted to petitioner in the sum of $5,000.

The defendant's answer, while admitting some of the allegations of the petition, denied all of them tending to fix liability upon it, and alleged that, no matter what sum was paid to Simonds by the petitioner, the defendant was under no contract, legal or moral, to pay petitioner any part of it.

A copy of the policy of insurance was attached to the petition. It was headed, *"Employers' liability Policy."* The paragraphs of the same which are here material are as follows: "That the Corporation will pay to the Assured, . . . subject to the subjoined general agreements, as conditions, in respect of any loss from common-law or statutory liability for damages on account of bodily injuries, accidentally suffered within the period of this policy, by any *employee* of the Assured while on duty on the premises hereinafter mentioned, or upon the ways immediately adjacent thereto, provided for the use of such *employees* or for the public, in and during the operation of the trade or business hereinafter described, . . eighty per cent. of such sum for which the Assured shall . . effect a compromise with the injured person, . . , but such sum paid by the Assured shall not exceed the *wages* of the injured person for the period of disability, and in no event shall it exceed the *average earnings* of the injured person for twenty-six weeks." "This policy does not cover any loss from liability for injuries to . . any child *employed* by the Assured contrary to law; nor to . . any child *employed* under fourteen years of age, unless such child is included in the schedule of *employees* hereinafter mentioned. . . The premium is based on the *compensation to employees* to be expended by the Assured during the period of this policy. . . In every case [of cancellation] the earned premium shall be computed on the *pay-roll for the year indicated by the actual expenditure for wages during* the time the policy shall have been in force. . . The check of the Corporation mailed to the address of the Assured as given herein shall not be payable until the Assured shall have rendered to the Corporation a full *statement of the wages expended* to the date of cancellation. . . The Corporation shall have the right and opportunity at reasonable times to examine the books of the Assured, so far as they relate to the *compensation paid to his employees.* . . The

Assured shall, if requested, furnish the Corporation with a written statement of the amount of such *compensation,* during any part of the policy period, under oath, if required. . . This policy covers *employees on the pay-roll* of the Assured, engaged in the maintenance in good condition of the existing ways, works, plants and machinery," etc. "Waiving of Conditions. No condition or provision of this policy shall be waived or altered by any one, unless by written consent of the General Manager of the Corporation, nor shall any notice to any agent, nor shall knowledge possessed by any agent or by any other person, be held to effect a waiver or change in this contract or in any part of it. . . The trade or business in respect of which the insurance is desired is fully disclosed in the schedule following. Schedule of *Employees* over Fourteen Years of Age." Among the subheadings under this main heading are: "Actual *Weekly Wage,*" and "Estimated Total Amount *Wages.*" Attached to the policy is a rider as follows: "It is understood and agreed that the under-mentioned policy, subject in all respects to its other conditions, agreements, and limitations, is hereby amended to cover in respect . . of *employees* while moving tracks. . . It is further understood and agreed that the *wages* of all such train and section crews, and *employees* shall be included in the *statement of pay-roll* provided to the Corporation at the end of the policy year, and that the premium thereon shall be paid at the rate of $2.50 for each and every $100,00 of *wages expended.*" Another rider so attached is as follows: "It is further intended under this policy to permit *employees included in the pay-roll estimated* to move track, build shanties," etc. (Italics ours.) Upon the trial oral and documentary evidence was offered, tending to show that John Simonds was a misdemeanor convict employed in mining by petitioner, that he was injured as set forth in the petition, and that petitioner was, as therein set forth, forced to pay him for such injuries. Other oral and documentary evidence was offered, which, as insisted by petitioner, tended to show that it was the intention of both the Assured and the corporation issuing the policy that it should include and did include, among the employees of the Coal Company, misdemeanor convicts. The court rejected all the evidence so offered "which tended to show that John Simonds, a convict, was covered by the policy of insurance sued on, upon the ground that said policy of insur-

ance, by its terms, did not include convicts, and no testimony could be offered to show that it was intended to include convicts, for the reason that this would be the admission of parol testimony contradicting the written contract, as it was not ambiguous." Thereupon the court, upon motion of the defendant, granted a nonsuit, to which ruling the plaintiff excepted. The defendant by cross-bill of exceptions assigned error upon the allowance of an amendment to the petition, claiming interest at the rate of seven per cent. per annum on the principal sum for which the action was brought.

1. We assume that the trial judge in ruling that the contract of insurance was unambiguous and did not, by its terms, include convicts, and therefore that no evidence was admissible which tended to show that the intention of the parties at the time of the execution of the contract was that it should include misdemeanor convicts, and that its terms were sufficient to include them, was based on the idea that the words which we have italicised in the extracts made from the policy, set forth in the foregoing statement of facts, clearly exclude convicts from the contract. After refer-ring to the various definitions of such words by the leading lexi-cographers, we are of opinion that the contract of insurance is not unambiguous and that its terms do not necessarily exclude a con-vict. The word "employee" is defined in the dictionaries as "one who is employed." This broad meaning, therefore, includes any person who is employed, without regard to whether he works vol-untarily or involuntarily. So, if a father had hired his minor son to the Coal Company for compensation to be paid to the father, in such case no contract would be made with the son, he would receive no wage, and perhaps would work involuntarily; but cer-tainly he would be employed by the employer, and would be an em-ployee in the accepted use of the term, and all the words of the policy which we have italicised would aptly refer to him. If the proper official should legally hire a person convicted of a crime to the Coal Company, to work in its mines, and receive compensa-tion therefor, the position of the convict would seem to be entirely analogous to that of the minor son, so far as the question here in-volved is concerned. He would certainly be "one who is employed," and consequently an employee, though so involuntarily. The court erred in excluding the evidence offered, on the ground stated. Of

course, parol contemporaneous evidence is inadmissible generally to contradict or vary the terms of a valid written instrument, and it is not admissible to both create and explain an ambiguity; but parol evidence is admissible to explain all ambiguities, both latent and patent. Civil Code, §§ 3675 (1), 5202. Where the writing is unambiguous, parol evidence is not admissible to modify, change, or explain it, and in such a case the understanding or intention of the parties must be ascertained from the language of the instrument; but if, for want of fulness of statement, the writing be indefinite or uncertain, parol evidence is admissible, not to vary, add to, or take from the writing, but to explain and so illuminate it as to make the real intention of the parties apparent. So parol evidence is admissible to explain ambiguous descriptive terms in a written instrument and to apply the same to their subject-matter. *Follendore* v. *Follendore,* 110 *Ga.* 359 (35 S. E. 676). Where a written contract is ambiguous as to the intention of the parties, evidence, otherwise competent, of acts and transactions between them, tending to show the construction the parties themselves put upon the agreement when it was executed, whether occurring prior to or subsequently to the execution of the contract, is admissible. *Morrison* v. *Dickey,* 122 *Ga.* 417 (50 S. E. 178) ; 9 Cyc. 588.

To some of the evidence rejected there were other objections made, but evidently the judge did not consider them, as he excluded all the evidence offered, upon the ground that the contract was unambiguous. Had it been indicated that the other objections were valid, it may be possible that the grounds thereof might have been removed by the plaintiff. We therefore do not decide the question whether such other objections should have been sustained, but leave it to be passed upon by the court below upon another trial, which must be had.

2. Counsel for the defendant in error contend that the nonsuit was demanded by reason of the failure of the plaintiff below to prove that Simonds was a misdemeanor convict. This contention is not meritorious. The court having ruled that the policy was unambiguous, and did not include any kind of convict, it was unnecessary for the plaintiff to go further, since it mattered not whether Simonds was a misdemeanor or a felony convict. "When the court has erroneously ruled out evidence without which the plaintiff could not possibly recover, his failure to go on and prove other

essential facts will not cure the error and sanctify a judgment of nonsuit." *Miller* v. *Speight,* 61 *Ga.* 460 (3) ; *Vaughn* v. *Burton,* 113 *Ga.* 103 (38 S. E. 310) ; *Proctor* v. *Blakely Oil Co.,* 128 *Ga.* 606 (57 S. E. 879).

3. The point made by the cross-bill of exceptions is that the court erred in allowing, over defendant's objection, an amendment to the petition, setting up a claim to interest at the rate of seven per cent. per annum on the sum for which the action was brought. According to the allegations of the petition, the sum sued for was a liquidated demand; and if the plaintiff was entitled to recover the same, it was entitled to recover interest thereon. "All liquidated demands, where by agreement or otherwise the sum to be paid is fixed or certain, bear interest from the time the party is liable and bound to pay them; if payable on demand, from the time of the demand." Civil Code, §2284. The legal rate of interest is seven per cent. per annum, where the rate is not agreed upon. Ib. §2876. The amendment was properly allowed.

*Judgment on the main bill of exceptions reversed; judgment on the cross-bill affirmed. All the Justices concur.*