13284, 13285.  BARTOW GUANO COMPANY *v.* ADAIR; and *vice versa.*

1. A suit upon a promissory note for the purchase price of goods sold may be amended by adding a count upon a quantum valebat in reference to the same subject-matter.

(a) Such an amendment does not set forth a new cause of action, even though the express contract originally declared upon includes an obligation to pay certain attorney's fees not in the implied contract, and a higher rate of interest than that allowable by law under the amendment.

2. In the sale of fertilizer material in bulk it is not necessary for the seller to comply with the provisions of §§ 1771 and 1772 of the Civil Code (1910), but such materials may be sold in bulk to persons who purchase the same for use on their own lands, upon a compliance with the provisions of the act approved August 14, 1903 (Ga. L. 1903, p. 84), contained in §§ 1796 to 1799 inclusive.

3. In a suit by a dealer in or manufacturer of fertilizers, either upon a

promissory note for the purchase price, or upon a quantum valebat for the value, of fertilizers, where the defense is made that the seller has failed to comply with the provisions of the law contained in §§ 1771 et seq. of the Civil Code (1910) in reference to inspection, analysis, and branding, the burden is upon the defendant to establish such want of compliance by the seller.

(a) Similarly, in a suit by a dealer in or manufacturer of fertilizer materials in bulk, either upon a promissory note for the purchase price or upon a quantum valebat for the value thereof, the defense that they were sold without a compliance with the law will fail unless it is alleged and proved by the defendant that the seller failed to comply with the provisions of the act of 1903, supra (§§ 1796 et seq.); it being the burden of the defendant to establish a defense so made.

4. There can be no recovery whatever in a suit upon a note, as an entire contract, for the purchase price of fertilizers sold, where it appears that any part of the fertilizers, for the price of which the note was given, was sold in violation of the statutes in regard to inspection, analysis, and branding; although in a suit upon a quantum valebat there may be a recovery for the value of fertilizers sold as to which the law has been complied with, even though there may have been no such compliance as to other fertilizers, the value of which is declared for in such count, unless both were included in an entire contract of sale.

5. The evidence would have authorized a verdict for the plaintiff, and the grant of a nonsuit was error.

6. There was no merit in the grounds of the demurrer, that the amendment seeking a recovery upon a quantum valebat set up a new cause of action, and that it was not alleged therein that the name of the fertilizer and the guaranteed analysis were not branded upon the container.

DECIDED FEBRUARY 16, 1923.

Complaint; from Paulding superior court — Judge Irwin. November 8, 1921.

Bartow Guano Company sued J. F. Adair upon a promissory note. The defendant filed an answer alleging that the note was given for the purchase price of fertilizers sold without a compliance with sections 1771 et seq. of the Civil Code (1910), and that the note, therefore, was based upon an illegal consideration and was void. The plaintiff moved to amend the suit by adding a second count as upon a quantum valebat, alleging a delivery by it to the defendant and an acceptance by him of 1¼ tons of the plaintiff's brand of fertilizer known as " Red Chief," of an alleged reasonable value stated; and alleging also the delivery by the plaintiff to the defendant, and the acceptance by him, of certain fertilizer materials in bulk, of a reasonable value stated, and praying for the recovery of the value thereof. The court allowed the amendment over written objections in the nature of a demurrer by the defendant, the

grounds of which were in substance and effect that the amendment was not germane; that a new cause of action is set up, especially since the note carries 8 per cent. interest and the obligation for the payment of attorney's fees, and the new count seeks a recovery of only 7 per cent. interest and no attorney's fees; that it is not alleged that the fertilizers the value of which is sued for were analyzed as required by law, nor that the name or the guaranteed analysis of the fertilizer was branded on the container. The court overruled the demurrer, and allowed the amendment.

With the suit thus amended there was no question between the parties as to who should have the right to open the case. So the plaintiff proceeded to offer its evidence. It undertook to show a sale of a quantity of fertilizers under the brand name " Red Chief," and also that as to such fertilizers the plaintiff had complied with the law in reference to inspection, analysis, branding, and otherwise, as contained in section 1771 et seq. of the code; also that it had delivered to the defendant a quantity of fertilizer materials in bulk, and that prior to the sale thereof, and in reference thereto, it had complied with sections 1796 and 1797. There was evidence of the reasonable value of the fertilizer, and also of what the plaintiff contended were fertilizer materials sold in bulk. There was also evidence tending to show that both had been received by the defendant. The latter were sold in sacks, some of which were not branded at all, while some were in sacks branded " Special."

A. Strickland, as a witness for the plaintiff, testified: " As to what we called ' Special,' that was not meant for a regular guano, but was merely the sale of materials for home mixture. We just had to have a name for something that was selling different from our regular 10-2-2 and things like that.. . . What I mean by ' Special,' that was not a regular guano, but was merely what the farmer himself made up for us and we filled it according to his order. We had customers that would come to the plant and look over the stock of goods and pick out the formulas. One fellow would want 300 pounds of potash and 100 pounds less acid, and would want more nitrate, and it was the ' Special ' that we would make. By the ' Special ' business, we had a little mixing plant there that we built seven years ago, and the farmers at home

wanted to make their own stuff, and it was the only place in the country where a farmer could drive up there and get what he wanted. . . That is the way Mr. Adair's fertilizer was made, and it was made out of these kind of materials I have described. . . As to who made up the formula, the farmer and I got together on it." While this witness testified that he did not make this particular order, the above was recited by him as the manner in which his company makes and sells fertilizer materials in bulk.

C. E. Day, sworn for the plaintiff, testified: "I lived here in Paulding county last year, and last spring . . sold some fertilizer for the Bartow Guano Company. I sold fertilizer to the defendant in this case. I went ahead and outlined two or three mixtures. He ordered from me 1000 pounds 16% acid, 400 pounds sheep manure, 300 pounds blood and bone tankage, 200 pounds potash and 100 pounds nitrate of soda to the ton. He gave me a signed order for it, and it was shipped. . . When I sold him these materials that I named, the company was to mix it for him. I sold him just the materials, and I guess he understood that. I offered him the option of buying a regular guano, and he took the materials. The way we determined on this particular mixture, he and I discussed it, and he decided on it. I told him we had other mixtures, and he decided on this combination himself. The articles that he bought from me were fertilizer materials used for the purpose of making fertilizer. I suppose the Bartow Guano Company mixed that material. I sold him the fertilizer materials for them. I just simply sold him the materials."

W. J. Henderson Jr., sworn for the plaintiff, testified: "As to how I combined the materials sold to Mr. Adair, his order specified 1000 pounds of acid, 400 pounds sheep manure, 300 pounds blood and bone tankage, 200 pounds of potash, and 100 pounds of nitrate of soda per ton. I had something to do with the mixing of that. It was mixed in accordance with that order. . . The materials as we claim we shipped to Mr. Adair on the order of Mr. Day was not shipped as a perfect fertilizer. Only the portion of his registered goods was shipped as a complete fertilizer. The other was only fertilizer materials shipped for his order. We just shipped that as materials. . . The reason we didn't put the guaranteed analysis on the sack is because he didn't buy registered

goods; he only bought fertilizer materials. We sold it as fertilizer materials for making fertilizer."

A rule promulgated by the commissioner of agriculture was introduced, which was as follows: "Any manipulator or manufacturer can mix said materials on which the tax has been paid for said purchaser as he requests, but the said mixture would not be subject to inspection or analysis by the State department." It was agreed that the defendant bought the fertilizer materials, not to be resold, but for use upon his own farm.

At the conclusion of the testimony for the plaintiff, the court granted a nonsuit, and the plaintiff excepted. The defendant filed a cross-bill of exceptions to the overruling of his demurrer.

*S. W. Ragsdale, Finley, Henson & Henson, Morris & Hawkins,* for plaintiff.

*C. B. McGarity, A. J. Camp, A. L. Bartlett,* for defendant.

BELL, J. (After stating the foregoing facts.) 1. It was the right of the plaintiff under the law to make an amendment of the nature indicated in the foregoing statement. In the case of *Akin* v. *Ordinary,* 54 *Ga.* 59 (4), (5), it was said: "If a plaintiff should sue on a promissory note in the statutory form which the law requires to be stamped, and the note could not be read in evidence for the want of a stamp on it, the plaintiff might amend his declaration by adding the common count of money had and received of the plaintiff, or paid by the plaintiff for the use and benefit of the defendant, and on proof thereof would be entitled to recover." In Bright *v.* Central City Street R. Co., 88 Ia. 535 (15 S. E. 12), it was said: "It has been repeatedly held by this court that a suit upon a note, even in the statutory form, can be amended by a count for money had and received, or other count, provided the original cause of action be adhered to." See also *Lewis* v. *Harper,* 73 *Ga.* 564 (2); *Cox* v. *Ga. R. &c. Co.,* 139 *Ga.* 532, 535 (77 S. E. 574); Civil Code (1910), § 5513. An amendment of the character indicated is not objectionable as setting up a new cause of action, simply because the original suit is upon a note which bears interest at the rate of 8 per cent. per annum, and provides for the payment of attorney's fees, while the implied obligation alleged in the new count carries interest only at the rate of 7 per cent. per annum under the law, for the plaintiff can waive his right to the higher rate of interest, and also the attorney's fees.

See, in this connection, *Ga. Iron &c. Co.* v. *Ocean Accident &c. Cor.*, 133 *Ga.* 326 (2)  (65 S. E.  775).

2, 3.  Sections 1796 et seq. of the Civil Code (1910) provide for the sale of fertilizer materials in bulk not for resale but for use by purchasers upon their own lands.  In such a transaction the seller is required to comply with these sections, and not with previous sections, 1771 et seq.  *Codman* v. *Roberds,* 27 *Ga. App.* 559 (2)  (109 S. E. 536).  Section 1797 is as follows:  " The commissioner of agriculture of this State shall have authority to establish such rules and regulations in regard to the registration, inspection, sale and analysis of acid .phosphate or other fertilizer materials, in bulk, sold to persons, individuals, or firms who desire to purchase and use the same as provided in the preceding section, as shall not be inconsistent with the provisions of this section, and as in his judgment will best carry out the requirements thereof."

It is to be observed that the rule of the commissioner of agriculture must be read into this section.  This rule is set out in the statement of facts preceding this opinion and provides that a manufacturer can mix the materials as the purchaser may request, but that the mixture shall not be subject to inspection or analysis by the State department.  A failure to comply with these sections is made a misdemeanor under § 1799, and, if a want of compliance therewith is shown, the transaction will be illegal and a defense on that ground will be good.  It is pertinent for these observations to be made in determining whether or not the court was right in granting the nonsuit.

One ground of the demurrer objects to the failure of the amendment to allege that the fertilizer known as " Red Chief," the value of which is also sued for in the amendment, " was duly analyzed as required by law and that the name of said fertilizer and the guaranteed analysis was branded on each sack or parcel or package stating definitely the source from which the phosphoric acid, nitrogen and potash was derived, and because . . it is not alleged what brand was sold to defendant."  A decision of the question raised by the demurrer makes it necessary to determine whether in a suit upon a quantum valebat for the value of fertilizers it is the burden of the plaintiff to prove a compliance with § 1771 et seq. of the code in order to be entitled to recover.  It

was held in *Lorentz* v. *Conner, 69 Ga.* 761, *Young* v. *Murray, 3 Ga. App.* 204 (59 S. E. 717), and *Holt* v. *Navassa Guano Co.,* 114 *Ga.* 666 (40 S. E. 735), that in a suit for the purchase price of fertilizer the burden is upon the defendant to establish such a want of compliance with the law by the seller. It is true that in each of these cases the suit was upon a note, but we have examined the records of file in the cases of *Griner* v. *Baggs, 4 Ga. App.* 232 (61 S. E. 147), and *Avera* v. *Tool, 74 Ga.* 398, and find that in each of these the suit was upon an open account. In the case of *Griner* v. *Baggs,* it was held: "Where a purchaser of fertilizers defends against the payment of the price on the groud that the fertilizers were not tagged or branded as required by law, before they were offered for sale, the burden is on him to establish the defense." And in the case of *Avera* v. *Tool* it was held: "In order to maintain a suit for the price of fertilizers, it was necessary for the plaintiffs to allege and prove that the fertilizer sold had been inspected, tagged, and branded; and a motion for nonsuit, on the ground of the want of such proof, was properly overruled. The want of inspection, tagging and branding is matter for plea, and the burden of proving it rests on the defendant." Therefore the burden of proof is upon the defendant to show a want of compliance with the statutes in reference to the sale of fertilizers whether the suit is upon a promissory note for the purchase price or upon an open account. And consequently we must hold that the burden is not upon the plaintiff in a suit upon a quantum valebat to prove that he has complied with the law with reference to the inspection, branding, and analysis; the burden to show the contrary being upon the defendant, especially under the last two decisions referred to. In the nature of the particular proceedings, if it is not a burden of the plaintiff to prove these things as a part of his case, it is not necessary that the plaintiff shall allege them. And we think the burden of proof must be determined by the same principles where the suit is for the sale of fertilizer materials in bulk.

We must say, however, that if it appears by the evidence, no matter by whom it is offered, that the plaintiff has not complied with the law which imposes certain duties upon him in respect to the sale of fertilizer or fertilizer materials in bulk, he is, upon the merits, in no better position in a suit upon a quantum valebat than he

would be in a suit upon a note, except to avoid the possible consequence of an entire contract. If the fertilizers or materials are sold illegally, there can be no recovery therefor any more by one sort of action than by another. The laws which make penal the sale of fertilizers or fertilizer materials in bulk do not refer simply to sales which may be evidenced by promissory notes for the purchase price, but refer as well to sales upon account or to transactions on which the plaintiff seeks to recover upon a quantum valebat. If the goods are sold in violation of the penal laws, they can have no recoverable value so far as the plaintiff is concerned, whether the suit proceeds under § 5513 by virtue of which the quantum valebat is declared upon, or otherwise. See, in this connection, *International Agricultural Cor.* v. *Spencer,* 17 *Ga. App.* 649 (87 S. E. 1101).

4. In a suit upon a note for the purchase price of various kinds and quantities of fertilizers, the price of which is stated only in the aggregate, there can be no recovery for any of the fertilizer, the purchase price of which is sued for, if sold in violation of the law. The contract sued upon, being entire, must fail altogether if the consideration is in any part illegal. *Allen* v. *Pearce,* 84 *Ga.* 606 (10 S. E. 1015). " A contract may be either entire or severable. In the former, the whole contract stands or falls together. In the latter, the failure of a distinct part does not void the remainder. The character of the contract in such a case is determined by the intention of the parties." Civil Code (1910), § 4228. " If the consideration be good in part and void in part, the promise will be sustained or not, according as it is entire or severable, as hereinafter prescribed. But if the consideration be illegal in whole or in part, the whole promise fails." Civil Code, § 4247. See also Civil Code, § 4251. Upon a quantum valebat the plaintiff could recover the value of any goods sold in compliance with the law although the value of goods sold in violation of the law (and for which, for that reason, no recovery can be had) be sued for therein, provided the contract of sale was severable. If the two classes of goods were sold together under an entire contract, the whole case must fail upon the new count, the quantum valebat, under the same principles as must apply to the original declaration upon the note. These conclusions we think are obliged to follow from

the code sections which we have referred to. See also, in this connection, *Frick* v. *Moore, 82 Ga.* 159 (8 S. E. 80).

The first count, as stated, is unquestionably upon an entire contract. In proceeding upon the second count an examination of the original transaction should be looked to in determining whether the contract of sale was entire or severable. The contents of the original order for the goods, which plaintiff contended was lost, might throw some light upon this question.

6. Under the principles above announced there was no error in overruling the defendant's demurrer.

*Judgment reversed on main bill of exceptions; affirmed on cross-bill. Jenkins, P. J., and Stephens, J., concur.*