## 8439, 8440. FAIRMONT CREAMERY COMPANY *v.* COLLIER *et al.*; and *vice versa.*

1. An executory contract of employment of an agent, which contains a stipulation that a part of his commissions on sales shall be applied in payment of a pre-existing debt due to the principal, does not remain in effect after the agent's discharge in bankruptcy from such previous indebtedness, so that its continued compliance could be thereafter enforced; but so long as the parties, by subsequent acquiescence in its terms and performance of its conditions, elect to treat the contract as still subsisting, they are bound by its provisions. ·

2. A novation of the nature or terms of a contract, made without the consent of the surety thereon, works a discharge of the surety.

DECIDED OCTOBER 31, 1917.

Complaint from city court of Atlanta—Judge Reid. December 12, 1916.

Fairmont Creamery Company sued Spratling as principal, and Collier as surety, on a bond given for the faithful performance of Spratling's duties as plaintiff's agent. The contract of agency was embodied in the plaintiff's letter to Spratling, under date of March 20, 1913, stating in part as follows: (*a*) "We will ship the butter to you at Atlanta, prepaying the freight on same, the 15½ oz. print of Better Butter solids to net us 2c over Elgin; the Better Butter quarters to net us 2½c over Elgin; . . we to wire you the market each Monday . ." (*b*) "You are to collect for the goods sold as billed, deposit the same in a bank to be selected by our Mr. Sumner, to our credit, sending us the deposit slips. . ." (*c*) "You to give us a bond . . that you will make proper accounting of all goods and money entrusted to your care." (*d*) "Out of the overage, which is to be your commission, half cent per pound to be applied on your debt to us until the same is paid." The bond referred to in this letter, and on which this suit is brought was entered into on June 13, 1913. This bond is in the penal sum of $5,000, and recites as its condition: "Whereas the above-bound F. J. Spratling has been appointed the agent of the Fairmont Creamery Company, of Omaha, Nebraska, for the selling of merchandise, for the billing out of same on blanks furnished by the Fairmont Creamery Company, and for the collection of the accounts of customers to whom said merchandise has been sold, and for the deposit of said collections in a local bank to be specified by the said Fairmont Creamery Com-

pany." It further recites that "if the said F. J. Spratling shall faithfully perform the stipulation as above stated, and render a true account of his doings therein to the proper authority when required thereby, and shall promptly pay over to the person entitled therteo all the money which may come into his hands by virtue of his said office, and shall faithfully account for all the balance of money remaining in his hands at the termination of his said office, and shall hereafter exercise all reasonable diligence," etc., "then this bond to be void." No direct reference is made by the bond to the letter quoted from.

Previously to this employment the principal had become indebted to the plaintiff on an unsecured open account, and this is the debt referred to in the last provision of the contract as quoted. Attached to the petition was an itemized statement of the plaintiff's demand, with credits by sums deposited to its credit, and by commissions, leaving a balance of $462.35, which was the amount sued for. It appeared from the evidence that this balance was in fact composed of three items which Spratling denied owing, to wit: (*a*) $141 for butter appropriated by Lowry Fruit & Produce Co., at whose place Spratling stored the butter, but which Lowry claimed he took for payment of a debt due him by Spratling, with Spratling's consent; (*b*) $22.50 commissions claimed for sale of butter to C. J. Kamper Grocery Co.; and (*c*) $298.85, being deductions from Spratling's commissions from April to September, 1914, inclusive, claimed by the plaintiff under the clause of the contract permitting deductions at the rate of one half cent per pound to apply on the old debt, which deductions Spratling claimed were illegal, because of the fact that in April, 1914, he filed his petition in bankruptcy, properly scheduling this old debt, and was duly discharged therefrom. The evidence showed, that, from the signing of the bond sued on as entered into on June 13, 1913, Spratling entered upon his duties as the agent of the plaintiff, and so continued to sell butter on commission for plaintiff until September 14, 1914; that during this entire period, at the end of each month, the company deducted the one half cent per pound out of his commissions and applied the deduction to the old debt; that about the tenth day following the previous month a statement was invariably mailed to Spratling, showing amount of commission earned, amount applied to debt, and net amount due,

for which a check of the company was enclosed; that these checks were cashed each month by Spratling, and no complaint was made; and that on April 6, 1914, just one day prior to the filing of his petition in bankruptcy, Spratling wrote to the company a letter containing the following: "It looks now as though I will be compelled to take benefit of the bankrupt law. So do not be surprised to get notice of it at any time. Mr. Wilson and Mr. Howe both will remember what I told them. If this is done it will be the best for you, no doubt of that, and best for me." After bankruptcy Spratling continued in the employment of the company as usual, received his statement each month containing the item, "Credited to your account————dollars," as theretofore, cashed his check with the one half cent per pound deducted by the company, and made no complaint or suggestion that because of bankruptcy he no longer was under obligation to have the one half cent per pound thus applied, until after the termination of his contract with plaintiff on September 14, 1914. Spratling then furnished a statement dated September 21, 1914, in which for the first time he claimed credit for the several amounts which had been deducted by the company from his commissions and applied on the old debt after the date of filing the bankruptcy petition.

The jury found for the plaintiff on the first item, that is to say, $141 and interest. The court ruled, as a matter of law, that the plaintiff could not recover on the other two items. So far as the main bill of exceptions is concerned, it is only the item of $298.85 which is now in dispute.

The surety on the bond further pleaded, by amendment, that he became surety under the contract of agency, wherein it was provided that the plaintiff should ship butter to Spratling to be sold by him at prices fixed by the contract; but that afterwards, without the surety's consent, the plaintiff varied the terms of said contract by authorizing Spratling to sell at lower prices, and that such change in the terms of the contract enabled Spratling to sell and collect for twice as much butter as he would otherwise have done; and that by reason of this fact the surety thereby became discharged from all liability under the bond. The trial judge overruled this contention; on which ruling the surety brought a crossbill of exceptions. The plaintiff contended that since there was nothing in the contract signed by Collier and Spratling, on which

suit was brought, which compelled the plaintiff to maintain any fixed price for the sale of its goods by Spratling, and sir the letter of March 20, 1913, was not made a part of the contract, it made no difference at what prices Spratling was allowed to sell the butter; and that the permission which it was shown had been given by the plaintiff, allowing the agent a different price at which to sell the butter, would not relieve the surety on the bond. The plaintiff contended also that there was no evidence showing that the risk of the surety was in fact increased by such lowering of prices.

*Walter S. Dillon*, for plaintiff.

*Hines & Jordan, Daley, Chambers & Daley*, for defendant.

JENKINS, J. (After stating the foregoing facts.)

1. While many courts and legislative bodies refer to a debt, from the liability of which the debtor has been discharged in bankruptcy, as having been extinguished, such expressions are not entirely exact and literally correct, since the discharge, strictly speaking, only operates as a bar to an action on the debt, and thus goes merely to the remedy. Black on Bankruptcy, § 710. If the existence of the debt and the moral obligation to pay it did not remain, there would be no consideration upon which a subsequent promise to pay could be founded, as is provided for by the Civil Code (1910), § 4384. Under this provision such a promise must be in writing, and it has been held by our Supreme Court that in order to be effective it must be clear, express, distinct, unequivocal, and without qualification or condition. *Moore* v. *Trounstine*, 126 *Ga.* 116 (54 S. E. 810, 7 Ann. Cas. 971). If after a discharge from the debt in bankruptcy Spratling had made a payment thereon in consideration of his moral obligation, suit would not lie in his behalf to recover the payment thus actually made, although of course, in the absence of a clear and distinct new written promise to pay, suit could not be maintained for the debt so discharged. The plaintiff in error does not take the position that Spratling by his agency contract created a lien on his unearned commissions on future sales. Such an attempted assignment of wages earned after the filing of the petition could not be enforced after the bankrupt had been granted a discharge. In Re Home Discount Co., 17 Am. Bk. R. 169, 180 et seq. (147 Fed. 538); Collier on Bankruptcy, 9th ed. 362, 363, 364; In Re Har-

rington, 29 Am. Bk. R. 669 (200 Fed. 1010); In Re Sims, 23. Am. Bk. R. 899 (176 Fed. 645); In Re Lineberry, 25 Am. Bk. R. 164, 166 (183 Fed. 338); Loveland on Bankruptcy, § 288. What the plaintiff does insist upon is, that, since an adjudication in bankruptcy does not sever contractual relations as such, but since they continue in force except in so far as they may have become merged into provable claims (Remington on Bankruptcy, §§ 541, 2675, 2729), and since the contract was not taken over by the trustee, nor any liability thereunder liquidated and the contract discharged, the executory contract of employment as originally made continued in full force and effect, and that if the contract of employment continued of force at all, it remained operative in all of its terms and provisions, including the one requiring that a certain portion of the commissions be applied on the pre-existing debt. This they urge must be the case, since courts can not make new contracts by cutting out particular provisions and leaving others. We can not think that this position of the plaintiff as applied to the instant case is altogether sound, and that such a contract should be treated as remaining of full effect in the sense that courts would enforce continued compliance. The consideration of the contract as affecting the defendant became altered by the discharge in bankruptcy from the pre-existing debt, since the payments which were to be made thereon as originally provided went in payment of a legal debt; whereas subsequent to the discharge they would go merely in satisfaction of a moral obligation. In this particular case, the contract being a continuous one specifying no time at which it was to terminate, and no time being fixed by law or usage, it could have been terminated at the will of either party with notice. *Electric Ry. Co.* v. *Coal Co.*, 98 *Ga.* 190, 192 (26 S. E. 741); *Bearden Mercantile Co.* v. *Madison Oil Co.*, 128 *Ga.* 695, 703 (58 S. E. 200). But suppose it had been a contract which by its terms was to remain of force for a definite term embracing a number of years, could it be said that after the discharge of the indebtedness, the payment of which supplied a part of the consideration of the agreement, the contract should be subsequently enforced and made to continue because the discharged indebtedness still existed merely as a moral obligation? We do not think this should be the rule. But while it would thus seem that after the discharge of such a pre-existing

debt as a legal obligation the defendant might in any case re-
pudiate the contract of employment where payments on the debt
constituted a part of the contract of employment, still we can see
no reason why the parties to the agreement might not, if they both
see fit, continue its operation; and in so far as they might actually
do so by acquiescence in its terms and performance of its condi-
tions, we think such conduct amounts to an election to treat the
contract as valid and still subsisting. This appears to have been
done in the instant case, since after bankruptcy Spratling con-
tinued in the employ of the company as usual, received his state-
ment each month containing the item "Credited to your account
————dollars," as theretofore, cashed his check with the one
half cent per pound deducted by the company, and made no com-
plaint or suggestion that because of bankruptcy he no longer was
under obligation to have the one half cent per pound thus applied,
until after the termination of his contract with plaintiff on Sep-
tember 14, 1914. We think this amounted to such acquiescence
and performance on the part of each of the parties as would
operate to keep the original contract of force. If the effect of such
acquiescence could be taken as setting up a new agreement upon
the same terms as the old, and so performed, the effect would be
the same, at least so far as the principal defendant is concerned.
Under this view of the law, it was error when the skilled and emi-
nent judge ruled as a matter of law that plaintiff could not re-
cover for the item of $298.85.

2. We think the plea of discharge entered by the surety was
meritorious. The evidence of Spratling showed that "The effect
in the change of the terms of the contract whereby I was author-
ized to sell on the lower margin enabled me frequently to double
my sales. I made collections for the sale under that contract."
He also testified that the change in the contract "enabled me to
price it to the customer at a less price, and I was enabled to sell
about twice as much butter." In *Little Rock Furniture Co.* v.
*Jones,* 13 *Ga. App.* 502 (79 S. E. 375), this court said: "A
change of the nature or terms of a contract is called a novation.
Such novation, without the consent of the surety, discharges him.
Civil Code (1910), § 3543; *Bethune* v. *Dozier,* 10 *Ga.* 235. This
rule will not be altered by the fact that the change in the con-
tract, which was made without the knowledge or consent of the

surety, nevertheless inured to the benefit of the principal and the surety. If the change is made without the knowledge or consent of the surety, the surety's complete reply is non hæc in fœdera veni. *Hill* v. *O'Neill,* 101 *Ga.* 832 (28 S. E. 996). The above stated rule applies to guarantors as well as to sureties; and any material alteration in the original contract, without the knowledge or consent of the guarantor thereof, would relieve him from the guaranty. *Johnson* v. *Brown,* 41 *Ga.* 498." See also Civil Code (1910), §§ 3540, 3544. The contract of employment as originally made purported to state the precise terms under which sales should be made; it allowed for no variation or alteration by subsequent authority which might be given the agent. This was the contract which Collier undertook to guarantee, whereas the alleged shortage arose from sales made under a different and subsequent agreement, and without the consent of the surety. Counsel for the defendant in error in the cross-bill urge that the lowering of prices authorized by the contract of employment did not discharge the surety on the bond, since the bond itself did not obligate plaintiff to maintain any fixed price for the sale of the goods by Spratling, and the letter of March 20th, 1913, by which the terms of employment were made and the prices fixed, was not made a part of the bond. Since, however, the bond was executed in accordance with the stipulations of the letter, and since the bond refers to the contract as actually made, we think the provisions of the contract are relevant to a suit on the bond. *International Harvester Co.* v. *Morgan,* 19 *Ga. App.* 716 (92 S. E. 35). Indeed, were no recourse had to the terms of the contract, there is nothing in the bond itself which could be taken to hold the surety in any way liable for a failure to remit the amounts payable on the old indebtedness; and were he not bound by this provision, it is probable that there would be no remaining liability under the bond.

*Judgment reversed on main and cross-bill of exceptions. Wade, C. J., and Luke, J., concur.*