### 16277.  KESSLER *v.* SLAPPEY.

Consent of the landlord to annulment of the lease could not be implied from mere acceptance of the keys from the vacating tenant.

Bankruptcy of a lessee does not of itself terminate the relation of landlord and tenant or constitute a breach of contract which will give rise to a claim for damages provable in bankruptcy. Under the agreed statement of facts in this case the judgment in favor of the plaintiff on the issue made by the counter-affidavit to the distress warrant was proper, and the court did not err in overruling the certiorari.

DECIDED NOVEMBER 16, 1925.

Certiorari; from Bibb superior court—Judge Malcolm D. Jones. November 22, 1924.

This case originated in the municipal court of Macon, on a distress warrant for the rent of a storehouse for February, 1925. A counter-affidavit was filed, the case was tried by the judge on the agreed statement of facts set forth below, and he rendered judgment for the plaintiff. The superior court, on certiorari, sustained the judgment, and the defendant excepted, his contentions as here

insisted on being: (1) that the premises had been previously surrendered by the defendant and accepted by the plaintiff; (2) that since the order of the bankruptcy court confirming the defendant's offer of composition carried with it the same effect as a discharge in bankruptcy, as against the plaintiff having actual knowledge of the hearing of the proceeding, it resulted in dissolving the relation of landlord and tenant, and extinguished all subsequent liability arising by virtue of the contract. The agreed statement of facts under which the case was tried is as follows: "On February 5, 1923, the plaintiff in the case, being the owner of the premises described in the distress warrant, entered into the following contract of rental with Kessler's Department Store: 'This agreement, made this Feb. 5, 1923, between Geo. H. Slappey, of Houston county, Georgia, and Kessler's Department Store, a firm composed of Walter Kessler of Bibb county, Ga., witnesses: that Slappey has rented to said Kessler's Department Store for the term of two years from April 1, 1923, the store at 117 Main street, Fort Valley, Ga., being the ground floor of the brick building known as Slappey's building, at the rental of $150.00 per month, payable in advance on the first day of each month, as per rent notes to that effect this day executed. Slappey is to make no repairs on the store, and is not to be liable for any damage to tenants or to their property. Should fire render the premises untenantable, this tenancy shall thereupon cease, and rent notes covering the period thereafter shall be at once surrendered by Slappey to tenants. As a part of the consideration of this contract, Slappey agrees that tenants may immediately on this day take possession of said store, and retain use and possession thereof without any charge for rent, or any charge of any kind from now to April 1, 1923. The store is rented to be used for conducting therein a general merchandise business. In witness whereof, we have hereto set our hands in duplicate, on this Feb. 5, 1923.

'G. H. Slappey,

'Kessler's Department Store, by Walter Kessler.

'Lessor agrees to allow lessee to terminate this contract August 1st, 1924, if given sixty days notice.

'Geo. H. Slappey.'

"At the time the said contract was executed, plaintiff assumed that Walter Kessler, who signed said contract, was the owner and

operator of the business known as Kessler's Department Store. Plaintiff did not know at that time that Z. Kessler, the defendant herein, was the owner of said business. As a matter of fact, Z. Kessler was the sole owner of the stock of goods and business of Kessler's Department Store, and Walter Kessler, his son, was in active charge of the business for the said Z. Kessler, at the store in Fort Valley, Georgia, which was rented to Kessler's Department Store by the plaintiff. The premises covered by the contract of rental were occupied and used by Kessler's Department Store from the date of said contract until January 14, 1924, at which time the said Z. Kessler started to moving the stock of goods out of said building. The store has not been occupied since by the said Z. Kessler or by anyone else. Plaintiff has been unable to secure another tenant for said premises since they were vacated on January 14, 1924. Z. Kessler, trading as Kessler's Department Store, paid the monthly rental of $150.00 for the months of April, 1923, to January, 1924, inclusive, but has paid no rent for the month of February, 1924, which is the month now being sued for. No notice was given by Kessler's Department Store to the plaintiff prior to the day the premises were vacated, to wit, January 14, 1924, of any intention to vacate the same; nor did plaintiff consent to the termination of any contract which he had for the rental of said premises. A few days after the store was vacated by Mr. Kessler, on January 14, 1924, to wit, about January 25, 1924, he sent one key to the office of Jones, Park & Johnston, where it was left for Mr. M. Souder, who had been representing Mr. Slappey in negotiations with Mr. Kessler. Mr. Souder sent the key to Mr. Slappey, and on being advised by Mr. Slappey that there were two locks which required two keys before the store could be opened, he called on Mr. Kessler for the other key, and obtained it at Mr. Slappey's request. On or about the 24th day of November, 1923, certain creditors of Z. Kessler, trading as Kessler's Department Store, filed in the United States district court at Macon, Georgia, an involuntary petition in bankruptcy against the said Z. Kessler, which petition was stayed on application of the said Z. Kessler, and on which petition there has been no adjudication. Shortly thereafter, on November 24, 1924, the said Z. Kessler filed a voluntary petition in bankruptcy, and contemporaneously therewith an offer of composition, asking that the adjudication in bank-

ruptcy be withheld pending action on said offer of composition. The said Z. Kessler filed a schedule of his creditors at that time, without listing the plaintiff herein. Plaintiff actually knew of the bankruptcy proceedings and of the offer of composition, but did not have any formal notice of any character from the bankruptcy court. On January 9, 1924, prior to which time plaintiff's build-ing had been occupied by Kessler's Department Store, an order was duly passed, confirming the aforementioned offer of composition, which has been accepted by a majority of the scheduled creditors of Z. Kessler. On April 15, 1924, Z. Kessler further amended his bankruptcy schedule by an amendment allowed by his honor J. N. Talley, referee in bankruptcy, in the following language: 'Comes now Zundel Kessler and, by leave of the court first had and ob-tained, amends his schedule in bankruptcy heretofore filed, as fol-lows: Schedule A-3 is amended by adding the name of George H. Slappey, Fort Valley, Georgia, pretended claim for rent, $1,050.00. Wherefore, movant prays that this his amendment be allowed.' No order was ever taken adjudicating Z. Kessler a bank-rupt, nor was any receiver ever appointed for his property, nor has he been discharged in bankruptcy, except in so far as the order confirming his offer of composition operates as a discharge. Fol-lowing the confirmation of said offer of composition on January 9, 1924, the stock of goods of Z. Kessler continued in the store at Fort Valley until moved, commencing January 14, 1924."

*Oliver C. Hancock,* for plaintiff in error.

*Jones, Park & Johnston,* contra.

JENKINS, P. J. 1. The parties to a lease may, by subsequent express agreement, annul the contract, or such intention may be implied by their joint acts and conduct inconsistent with the pre-existent relationship. In all cases the true purpose and intent of the parties, as manifested by their words or conduct, viewed in the light of the surrounding facts and circumstances, must govern; but the mere acceptance of the keys by the landlord from a vacating tenant will not itself alone operate to establish as a matter of law an implied surrender and acceptance. *Ledsinger* v. *Burke,* 113 *Ga.* 74, 77 (38 S. E. 313); *Schachter* v. *Tuggle Co.,* 8 *Ga. App.* 561 (70 S. E. 93). In the instant case the agreed statement of facts specifically states that the plaintiff did not "consent to the termination of any contract which he then had for the rental of said premises."

2.  In regard to defendant's other contention, the rule laid down in the cases relied on by him (In re Inman & Co., 171 Fed. 185, followed in *Lesser* v. *Gray,* 8 *Ga. App.* 605, 70 S. E. 104; In re Jefferson, 93 Fed. 948; In re Hayes, Foster & Ward Co., 117 Fed. 879; Bray *v.* Cobb, 100 Fed. 270) appears to have been in effect abrogated by the ruling of the United States Supreme Court in the later case of Central Trust Co. of Illinois *v.* Chicago Auditorium Asso., 240 U. S. 581 (36 Sup. Ct. 412, L. R. A. 1917B, 580, 60 L. ed. 811). There it was said that it is the purpose of the bankruptcy act, generally speaking, to permit all creditors to share in the distribution of the assets of a bankrupt, and to leave the honest debtor thereafter free from liability upon previous obligations; and it was in effect held that the intervention of bankruptcy, whether voluntary or involuntary, does not terminate executory contracts as a class, but may constitute a breach thereof such as to give rise to a claim provable and dischargeable in the bankruptcy proceedings. In this decision the Supreme Court calls attention, however, to the distinction which exists between executory contracts in general and contracts arising out of the relation of landlord and tenant by reason of the "diversity between duties which touch the realty, and the mere personalty," quoting Coke on Littleton. Accordingly it appears that in cases of executory contracts other than such as arise out of the relationship of landlord and tenant, bankruptcy, while not terminating the obligations per se, does ordinarily amount to a breach; yet in contracts involving this relationship not only is it true that bankruptcy does not terminate the relationship, but it does not constitute a breach such as would permit a claim for damages provable in bankruptcy, and thus prevent the enforcement of the contract itself. In Watson *v.* Merrill, 136 Fed. 359, decided by the Circuit Court of Appeals, eighth circuit, and cited by the Supreme Court in the case referred to, it was held that "Damages for the breach of a contract of the bankrupt to pay rents at times subsequent to the filing of the petition in bankruptcy do not constitute a provable claim, for the same reason that the claim for rents is not provable. The retaking of the premises by the lessor releases the lessee from payment of all subsequently accruing rents unless the contract expressly provides otherwise. The trustee in bankruptcy has the option to assume or renounce the leases and other executory con-

tracts of the bankrupt, as he may deem for the best interest of the estate." In re Roth & Appel, 181 Fed. 667 (C. C. A. 649, 31 L. R. A. (N. S.) 270), decided by the circuit court and cited by the Supreme Court, it was held that "The bankruptcy of a lessee does not sever the relation of landlord and tenant, and the tenant's obligation to pay rent under his lease is not discharged as to the future, unless the trustee elects to retain the lease as an asset." The same rule is stated in 7 Corpus Juris, 396 (§ 705): "A tenant's discharge in bankruptcy does not terminate the lease nor change the legal relation of landlord and tenant unless the landlord re-enters, or the trustee assumes the lease." In Rosenblum *v.* Uber, 3 Circuit Court of Appeals (256 F. 584, 167 C. C. A. 614, 43 Am. B. R. 480), it was said: "A trustee may, with the *consent* of the *landlord,* surrender a lease; whereupon the landlord regains possession of the premises, and all unmatured obligations between the parties depending upon the continuance of the leasehold estate are terminated. But a valid surrender consists not only in an offer by the lessee to surrender but an acceptance of that offer by the landlord." In the same case it was said: "A trustee may, at his option, assume a lease of the bankrupt or decline to assume it as an asset of the estate; and he has a reasonable time within which to exercise his option. If he assumes it the bankrupt is released, if he does not the lease is in force." In English *v.* Richardson, 80 N. H. 364 (22 A. L. R. 1302, 48 Am. B. R. 582), it was said: "In the absence of a provision in a lease to the contrary, a trustee in bankruptcy may, at his option, assume the lease of a bankrupt tenant, but in that case he takes the leasehold in the same plight as the debtor held it, subject not only to the burdens which rested upon the debtor, but also to all valid claims, liens, and equities in favor of third parties, and in such event, the debtor is relieved from liability for future rent. If, *on the other hand, the trustee renounces the lease, the relations of the landlord and tenant subsist, and the latter's discharge in bankruptcy does not release him from his obligation to pay rent."* Thus, these cases and others seem to formulate the rule in executory contracts pertaining to lease of realty, that not only is the contract not terminated by bankruptcy, but that a breach is not occasioned thereby so as to give rise to a claim provable in the bankruptcy court, but that upon the adjudication in bankruptcy of a tenant he may, with the consent

of the landlord, and *only with the consent of the landlord,* surrender the rented premises and terminate the lease. Or if the lease has a value the trustee may elect to assume it as part of the assets of the bankrupt estate. If he does so he assumes all the burdens of the lease, including the obligation to pay rent, and in that event the bankrupt is released, the trustee being substituted in his place. On the other hand, if there be no trustee, or if he renounces the lease or elects not to assume it, the relations between landlord and tenant are not affected by bankruptcy, and the obligation on the part of the tenant to pay future rent exists and can only be terminated with the consent of the landlord. Especially would the ruling of the court below seem to be correct under the facts of the instant case, where it appears that the contract was neither terminated nor breached upon the institution of the bankruptcy proceedings, because of the continued occupancy and possession of the store by the tenant, Kessler, and his continued payment of rent under the terms of the lease for two months after bankruptcy. Independently of the general rule these facts would constitute an implied election on his part, with the consent and acquiescence of the landlord, to continue the contract in force.

*Judgment affirmed. Stephens and Bell, JJ., concur.*