18804.   MASSEY *v.* WINCHESTER.

DECIDED MAY 15, 1928.   REHEARING DENIED JUNE 12, 1928.

*E. F. Goodrum,* for plaintiff in error.

*Brock, Sparks & Russell,* contra.

LUKE, J. (After stating the foregoing facts.) From the fore·going statement it will be seen that after Massey was adjudicated a bankrupt he and Winchester made an oral agreement under which Massey retained the real estate and agreed to execute the written contract already in writing. The question for determination is, was this agreement a parol promise to pay a debt dischargable in bankruptcy and void under § 4384 of the Civil Code of 1910, or was it

a new agreement based on a valid consideration, possessing the requisites of a valid contract, and enforceable?

Had Winchester foreclosed his security deed and the foreclosure still left a part of the debt unpaid, and this debt had been listed by Massey as a liability, and Massey had been discharged in bankruptcy, the debt could not have been rendered enforceable after Massey's discharge, except by a written promise to pay the same. But such was not the case. The bankruptcy court recognized that Massey had given to Winchester a security deed to the property, and that Massey had no equity therein which would inure to the benefit of his creditors, and the real estate was turned back to Massey by the bankrupt court as burdensome property, or, in other words, property which was unprofitable to Massey's creditors, and therefore such property as the bankrupt court would not handle, and there was not even an appointment of a trustee.

After the defendant was adjudicated a bankrupt and after he failed to pay the note due on January 11, "the plaintiff approached defendant with the view of arranging to take back the said real estate and to have the defendant vacate the same without the necessity of a foreclosure of the said security deed." The agreed statement of facts shows this, and therefore it is undisputed that it was when the defendant was confronted with the necessity of making some arrangement or losing possession of the property that he "entered into a verbal contract by the terms of which it was agreed that inasmuch as the said real estate had been turned back to the defendant as burdensome, the said defendant would continue in possession of the same and complete and carry out his contract of purchase as evidenced by the notes and the security deed." The defendant had not been discharged in bankruptcy at the time of this new agreement, and even if he had been discharged, such discharge would not extinguish the old debt, but would operate only as a bar to an action thereon, and thus go merely to the remedy. Black on Bankruptcy, § 710. The parties merely agreed to continue a written contract, and this agreement was itself a contract between two persons capacitated to contract to do a specified thing, and both parties assented thereto, and there was a consideration therefor. In other words, since the writing already in existence embodied the terms of their new contract, they made an oral agreement to adopt the already written contract as the new contract, instead of re-

writing that which was already written. Section 4384 of the Civil Code, relied upon by the defendant, provides that "no promise made *after* discharge in bankruptcy" shall be valid unless in writing; and the record shows that this new agreement was made *before* the defendant was discharged in bankruptcy, and possessed all the requisites of a valid contract.

It may reasonably be presumed, from the fact that Massey made the new agreement, that he desired to hold the property, as by doing nothing he would have lost it. Under the new agreement Winchester arranged with the bank for the reestablishment and reinstatement of the notes and the security deed and he arranged for Massey to remain in possession of the property; he arranged with the bank that the notes would be due on their maturity dates instead of all at once, as they were due immediately prior to the new agreement; he gave up his right to foreclose or have the bank foreclose at that time. This constituted a valid consideration, flowing from Winchester to Massey, and this new consideration went to Massey *after* he had been adjudicated a bankrupt. There is no law to prevent contracting by one who has been adjudicated a bankrupt and has not been discharged, and Massey so contracted. 7 Corpus Juris, p. 399, sec. 714. Winchester fully performed his part of the new contract, and Massey, by virtue of the new contract, remained in possession of the property and partially performed the new contract by paying three monthly notes after the new agreement was made. Under § 3223 (2, 3) of the Civil Code, the statute of frauds does not apply "where there has been performance on one side, accepted by the other in accordance with the contract," and "where there has been such part performance of the contract as would render it a fraud of the party refusing to comply, if the court did not compel a performance." It is shown by the agreed statement of facts that the defendant made partial payments on the realty, and remained in actual possession thereof, with the consent of the vendor, from the time of the new agreement, and that during all of this time a portion of the real estate was subrented at the rate of $28 per month, and the defendant received the benefit of the rental. Undoubtedly, as long as Massey remained in possession and paid the notes under the new agreement, neither Winchester nor the bank could have ousted him; and if the new agreement was enforceable by Massey, it was likewise enforceable by Win-

chester, as the law does not sanction unilateral contracts. See, in this connection, *Kinderland* v. *Kirk,* 131 *Ga.* 454 (2) (62 S. E. 582); *Vanduzer* v. *Christian,* 30 *Ga.* 336.

In *Fairmont Creamery Co.* v. *Collier,* 21 *Ga. App.* 87 (94 S. E. 56), the company sued Spratling as principal and Collier as surety on a bond given for the faithful performance of Spratling's duties as the plaintiff's agent. In answer to the suit it was pleaded that a part of the debt sued upon represented a claim for a part of Spratling's commissions, to be applied on an old debt due by him to the company, and that since the creation of the old debt he had been adjudicated a bankrupt, and his discharge extinguished that debt. The record shows that before and after his bankruptcy the company had been deducting regularly a certain amount of Spratling's commissions and applying it on his old debt to the company, and that Spratling acquiesced in this deduction after he was adjudicated a bankrupt. This court held that literally a discharge in bankruptcy does not extinguish a debt, but "strictly speaking only operates as a bar to an action on the debt, and thus goes merely to the remedy." And the court said (p. 92): "We can see no reason why the parties to the agreement might not, if they both see fit, continue its operation; and in so far as they might actually do so by acquiescence in its terms and performance of its conditions, we think such conduct amounts to an election to treat the contract as valid and still subsisting. This appears to have been done in the instant case, since after bankruptcy Spratling continued in the employ of the company as usual, received his statement each month containing the item 'Credited to your account ———— dollars,' as theretofore, cashed his check with the one half cent per pound deducted by the company, and made no complaint or suggestion that because of bankruptcy he no longer was under obligation to have the one cent per pound thus applied, until after the termination of his contract with plaintiff on September 14, 1924. We think this amounted to such acquiescence and performance on the part of each of the parties as would operate to keep the original contract of force. If the effect of such acquiescence could be taken as setting up a new agreement upon the same terms as the old, and so performed, the effect would be the same, at least so far as the principal defendant is concerned." The case now under consideration is even stronger than that case. In both

cases there was a written agreement before adjudication in bankruptcy, and no new writing after adjudication; but in that case the new agreement or continuance of the old agreement was merely by acquiescence, while in the instant case there was an express agreement by the defendant. See, in this connection, *Kessler* v. *Slappey,* 34 *Ga. App.* 614, 619, 620. (130 S. E. 921).

Under the foregoing authority and the particular facts of this case we rule as stated in the headnotes.

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*