FRICK & COMPANY vs. MOORE.

1. The evidence showing that the notes in question were given by the complainant to settle both a criminal prosecution of her son and a debt due by him to defendants, a verdict finding that they were given solely to settle or suppress a criminal prosecution was contrary to the evidence.

(a) If, on the trial of a suit at law brought by the defendants against the complainant on the notes, it had appeared that the consideration of all the notes was part legal and part illegal, the legal could

not have been separated from the illegal, and there could have been no recovery.

(b) The complainant having received from the defendants, in a settlement made, an account against her son for an engine and notes given by him for another, before she would have been entitled to the decree rendered (had the verdict been correct), she must have tendered to defendants the account and notes, or, if she had lost the notes, must have proved that defendants were not damaged by her failure to make such tender before filing her bill. An amendment made during the trial, alleging that the notes had been lost or mislaid, and tendering duplicate notes signed by her son in lieu of the originals, but supported by no proof that these had been lost or mislaid or had never been paid, or as to the account, (about which there was no allegation, and which is not mentioned in the decree,) was not sufficient to entitle her to such decree.

2. An agreement not to prosecute or to suppress a criminal prosecution is forbidden by law, irrespective of the motives of the parties.

(a) But if there were duress, the question as to the complainant's motive in giving her notes would be proper for submission to the jury, in connection with the threat to prosecute.

November 30, 1888.

Verdict. Evidence. Equity. Promissory notes. Consideration. Practice. Before Judge RONEY. Richmond superior court. April term, 1888.

Reported in the decision.

TUTT & LOCKHART, by JOHN C. REED, for plaintiffs in error.

BOYKIN WRIGHT, *contra.*

SIMMONS, Justice.

It appears from the record in this case, that Mrs. Moore filed her bill against Frick & Co. and others in the court below, for injunction, relief, etc. She alleged in her bill that, in the year 1885, she executed and delivered to Frick & Co. twelve promissory notes, each for $100 and interest, except one which is for $126.09.

She alleged that these notes were procured from her by duress, and for the purpose of suppressing a criminal prosecution ; that Frick & Co. had charged her son with larceny after trust of a certain steam engine, and had threatened a criminal prosecution against him and by reason of their threats to prosecute him, had thereby obtained the notes from her. She asked that Frick & Co. be enjoined from disposing of the notes, and that they be surrendered and cancelled.

Frick & Co., in their answer, denied all the material allegations in the bill. They denied that the notes were given to them by Mrs. Moore to suppress a criminal prosecution against her son, but alleged that they were given for an account held by them against the son of Mrs. Moore, and for four promissory notes of $154 each, which her son owed to them, and which notes and account they had transferred to Mrs. Moore in the settlement, and that this transfer was the real consideration for the notes given to them by her.

On the trial of the case, the judge in the court below submitted certain questions of fact to the jury. These questions were answered by the jury in favor of the complainant ; whereupon the judge entered up a decree in her favor, decreeing that Frick & Co. should surrender the notes to be cancelled, and that certain duplicate notes which had been signed by the son during the trial, the originals being lost or mislaid as alleged in the amendment to the bill, which original notes had been given by her son to Frick & Co. for a debt due them other than the debt for the engine, should be received by Frick & Co. in lieu of the original notes which were alleged in an amendment to her bill to have been lost or mislaid and which were not produced on the trial. The defendants below moved for a new trial

on several grounds. The motion for a new trial was overruled by the court, and the defendants excepted. The questions submitted by the court to the jury were as follows:

(1) What was the motive that induced Mrs. Moore to give her notes to Frick & Co.? Answer: To prevent criminal prosecution of her son.

(2) Was she induced to do so by the threats of Frick & Co. to prosecute her son, H. P. Moore, to prevent the said prosecution? Answer: Yes.

(3) Has H. P. Moore accounted to Frick & Co. for engine claimed to have been lost? Answer: No.

(4) Were the notes given by Mrs. Moore in part to settle a criminal prosecution, and in part to settle a debt due by her son to Frick & Co.? Answer: No.

(5) Or were the notes given solely to settle or suppress a criminal prosecution? Answer: Yes.

(6) Or were the notes given solely to settle a debt due by her son to Frick & Co.? Answer: No.

1. Among the grounds taken in the motion for a new trial was the ground that the "verdict is contrary to the evidence." We think the court should have granted a new trial upon this ground. The jury found, in answer to the 4th and 5th questions propounded to them, that the notes given by Mrs. Moore were not given in part to settle a criminal prosecution, and in part to settle a debt due by her son to Frick & Co., but were given solely to settle or suppress a criminal prosecution. We have read the whole of the evidence sent up in this record, and we think it clearly demonstrates that the notes were not given by Mrs. Moore solely to suppress a criminal prosecution. Her counsel, the Messrs. Miller, both testified that the agreement was not only to settle the criminal prosecution, but the consideration of the notes

was partly to suppress the criminal prosecution, and
partly for the account which Frick & Co. held against
her son for the engine for which he failed to account
and the notes which they held against him for the sale
of another engine, and by the terms of the agreement
they were to be transferred by Frick & Co. to her;
and her receipt for the account and notes to Frick &
Co. is set out in the record. This testimony was cor-
roborated by Mrs. Moore and her son, both of them
testifying to the same thing. How the jury could
have answered these questions in the way they did,
with this evidence before them, we are unable to see.
The defendants, in their testimony, deny that the
notes were given by Mrs. Moore to suppress a crim-
inal prosecution, and say that they were given in settle-
ment of their account against the son, and of his notes
which he owed them. The weight of the testimony seems
to us to be that the notes were given by Mrs. Moore for
both purposes; and if the jury had found in accor-
dance with this view of the testimony, the rights of Mrs.
Moore in equity would have been quite different. Frick
& Co. had sued her on two or three of these notes in
a court of law, and if she had remained in a court of
law and set up the same defence which she sets up in
her bill, although it might have turned out that the
notes were given not only to suppress a criminal pros-
ecution, but partly to take up the notes and account of
her son, she could have successfully defeated a recovery
therein. If the evidence showed that the consideration
was part legal and part illegal, in all of the notes, the
legal consideration could not have been separated from
the illegal, and Frick & Co. could not have recovered
on the notes in a court of law. Code, §2745. But she
seems not to have been satisfied with her rights in a
court of law, and resorted to a court of equity. In that

court the rule is different. If she seeks equity, she must
do equity. It appears from the evidence in this case
that in the settlement, she received from Frick & Co.
an account against her son for an engine, and re-
ceived also four notes given by the son for another
engine. We think that in equity, had the verdict been
correct, before she would be entitled to this decree,
she must have tendered to Frick & Co. the account
and notes against her son which she had received from
them. She must have placed them in the same position
they were in before the settlement was made, before she
could ask a court of equity to compel them to surrender
to her her notes; or if she had lost or mislaid the notes
turned over to her by Frick & Co. on her son, she
should have shown to the court by proof that Frick
& Co. were not damaged by her failure to tender the
same to them before the filing of her bill. If her son
was insolvent at the time she gave her notes and
received his notes from Frick & Co., and still re-
remained insolvent at the time of filing her bill, then if
she failed to tender or surrender the notes and account
against her son to Frick & Co., it would seem that they
would not be damaged by her failure to do so. If, on
the other hand, he was not insolvent at the time of filing
her bill, and she failed to tender or surrender the notes
and account against him, then it would seem that they
would be damaged by her failure, and she would not
have been entitled to relief in a court of equity without
repairing such damage. It is true that in the progress
of the trial, she amended her bill and set out that the
notes received from Frick & Co. on her son had been
lost or mislaid, and in said amendment tendered four
duplicate notes, which she alleged had been signed by
her son in lieu of the lost originals, and it seems that
the son was present and assenting thereto. The amend-

ment appears to have been sworn to by her counsel, but there is no proof in the record, from any witness that we have been able to find, that said notes were lost or mislaid, or that they had never been paid, nor was there any allegation in her amendment or any proof offered by her as to the account, which had been transferred to her by Frick & Co. This amendment, therefore, was nothing but pleading ; and the court could not enter up a decree on the amendment without proof and the finding of the jury thereon, if the fact was contested. The account, as before remarked, was not alluded to in her amendment nor in her proof, nor was it mentioned in the decree.

2. We think also that the form of the first question submitted to the jury should be changed, if questions of fact should again be submitted to the jury on the next trial. Instead of inquiring from them what was the motive that induced Mrs. Moore to give the notes to Frick & Co., we think the question should be asked the jury whether there was any agreement or contract between Mrs. Moore and Frick & Co. to suppress a criminal prosecution. In cases like this, where the compounding of a felony is the issue, in our opinion it does not matter what the motive is which induces one party to give notes ; the main question is, was there an agreement not to prosecute or an agreement to suppress a criminal prosecution? If there was, the motives of the parties would have nothing to do with it. It is forbidden by law, whatever the motives may be. It is the agreement to suppress the prosecution which makes it illegal, and not the motive of the person giving the notes. If, however, the complainant should rely upon the fact of duress also, then it would be proper to submit the question as to the motive that induced Mrs. Moore to give her notes, in connection with the threat

to prosecute.   In trying the question as to whether she gave them under duress, her motives for giving them would be a proper inquiry.

We think we have sufficiently indicated our view of the law of the case to guide the chancellor upon the next trial.   Taking this view of the case, it is unnecessary for us to pass upon other questions made in the motion for a new trial.

Judgment reversed.