794. OAK CITY COOPERAGE COMPANY v. KENNEDY
STAVE AND COOPERAGE COMPANY.

1. "The general rule is that when an offer to sell a quantity of goods at a
specified price has been accepted by the person to whom it is made,
both parties become bound by the terms of the offer, and neither is at
liberty, after such acceptance, to withdraw."
2. The correspondence between the parties, set out in the opinion, makes
a binding and enforceable contract, and breach thereof by one party, re-
sulting in damage to the other, would give a cause of action.

Complaint, from city court of Bainbridge—Judge Harrell. Oc-
tober 14, 1907.

Argued December 18, 1907.—Decided May 18, 1908.

The Kennedy Stave and Cooperage Company brought suit against
the Oak City Cooperage Company, on an account for a certain
number of barrel staves which had been sold by the plaintiff to the
defendant. The defendant's answer, as amended, set up a corre-
spondence between it and the plaintiff, which it claimed made a
contract, under which the plaintiff was to supply to the defendant
a number of barrel staves during the season of 1907 at a stipulated
price; and alleged, that the plaintiff had broken the contract, in
charging more than the stipulated price, and in failing to furnish
the number of staves agreed upon, and that the defendant had
thereby sustained damages, specifically set out, which it claimed
to have the right to recoup as against the claim of the plaintiff.
The plaintiff demurred to the answer as amended, on the ground
that the correspondence set out did not make a contract,—that
the minds of the parties never met on the terms of the alleged con-
tract, and that it is lacking in mutuality and is unilateral. The
court sustained the demurrer and struck the answer, and the de-
fendant excepts.

The plaintiff in the court below was a manufacturer of barrel staves, and the Oak City Cooperage Company was a manufacturer of barrels, and the former had for some time furnished to the latter the staves used in the manufacture of barrels. On November 24, 1906, the plaintiff sent to the defendant the following telegram: "Are you depending on us to supply you next season? Price will not be less than $33. Answer;" and on the same date sent the following letter: "We have just telegraphed you as follows: 'Are you depending on us to supply you next season? Price will not be less than $33. Answer.' Our reason for telegraphing you is that we have had more pressing inquiry for staves already than we can furnish next year, and it is our desire to take care of all of our oldtime customers first. Of course, if in the event you have decided to look elsewhere for your staves, if you will advise us quick, we can fill our book very easily." On November 24, 1906, the defendant replied to the telegram and letter, as follows: "We are in receipt of your favor of the 24th, in which you confirm your telegram, and to which we replied as follows: 'Yes, we are depending on you for our supply of staves at $33, if this is the best you can do.' We have not tried any one else for staves, as it has been our habit of buying our supply from you, and we feel that you will do the very best for us that you possibly can. This price seems a little bit high, but, as stated above, we have not tried the market, but feel assured that if the price should be less than $33 you would give us the benefit of the difference." On November 26, 1906, the plaintiff wrote to the defendant: "Your telegram dated the 24th received last Saturday night, and reads, 'Yes, we are depending on you for staves at $33, if that is the best you can do.' We thank you for this information and will be governed accordingly, but in the meantime would like for you to advise us as near as you can about how many staves you will require. The new price will go into effect December 1st. We doubt not that the price will go higher than $33. In fact we could get more than that for our staves to-day, and the advance should have taken effect 30 days ago, but to our regular customers we have been trying to hold it down as long as possible, although the price of rough materials and advance in wages did not justify us in doing so." On November 30, 1906, the defendant, in reply to this letter, wrote as follows: "Replying to your letter of the 26th, we will need, during the com-

ing year, in the neighborhood of 700,000 staves of an average of
4 1/2.   Please advise if we can count on your furnishing us this
number of staves.   We beg to call your attention to the fact that
you have not shipped us any staves since the 9th, and will ask
that you ship us a car of staves per week until further orders.   We
will be entirely out by the end of next week."   On December 3,
1906, replying to this letter, the plaintiff wrote: "We have your
favor of the 30th, and note that you will need for next season's
use in the neighborhod of 700,000 staves.   We are not in a position
to-day to state just how many we will be able to supply, but will
advise you a little later just what we will be able to do."   On De-
cember 8 the plaintiff again wrote: "Referring to recent corres-
pondence in regard to the probable number of staves that we will
be able to furnish you next season, we beg to advise that we have
sold two of our auxiliary stave plants that were located in the south
part of this State, and this, of course, reduces our capacity, and
we have decided that we had better say to you not to depend on us
for over 400,000 staves for next year.   We do this in order that
you may be able to take care of yourself."   There was no direct
reply to this letter, but on December 13 the defendant telegraphed
and wrote to the plaintiff complaining of the delay in receiving
the staves.   On December 21 the plaintiff wrote to the defendant,
stating, that the plaintiff had had a meeting of its stockholders, and,
on account of the ill health of its manager, and with a view of
changing the location of the business, it had determined to offer
its plant for sale; and that having come to this conclusion, and
feeling sure that the sale would be effected in a short time, it ad-
vised the defendant to make arrangements with some other manu-
facturer to supply the defendant with staves for the next season's
delivery.

  *Russell & Hawes,* for plaintiff in error.

  *R. G. Hartsfield,* contra.

  HILL, C. J.   (After stating the facts.)

  The sole question for decision arises on the construction of the
foregoing correspondence.   Does this correspondence show a con-
tract between the parties?   The writer of this opinion is not
without doubt as to the correct conclusion from the facts, but the
doubt is not sufficient to justify a dissent from the judgment of
his colleagues.   To constitute a valid contract it is essential that

both parties thereto fully assent to its terms. Civil Code of 1895, §§3631, 3637. Did the minds of the parties meet and·agree on the quantity of staves which one of the parties was to furnish to the other, and on the price to be paid? Both constituted essentials of the contract, and if there is doubt as to either, the contract would not be complete and enforceable. The general rule is well settled that where an offer to sell a quantity of goods at a specified price has been accepted by a person to· whom it is made, both parties become bound by the terms of the offer, and neither is at liberty, after such acceptance, to withdraw. *Black* v. *Maddox,* 104 *Ga.* 161 (30 S. E. 723). To determine the question involved, we must look to the terms of the correspondence relied upon to show a contract.

The plaintiff in the court below, it appears, had been previously furnishing barrel staves to the defendant, who was a manufacturer ,of barrels, and, as the end of the season of 1906 approached, it wired and wrote to the defendant as follows:· "Are you depending on us to supply you next season? Price will not be less than $33. Answer." And in the letter, it assigned, as a reason for the inquiry, that it was receiving pressing inquiries for staves, more than it could furnish during the ensuing year, and it was its desire ·to take care of its old customers first. On the same day that this telegram and this letter bear date, the ·Cooperage Company replied: "Yes, we are depending on you for our supply of staves ·at $33, if this is the best you can do. We have not tried any, one else for staves, as it has been our habit of buying from you, and we feel that you will do the very best for us that you possibly can. This price seems a little bit high, but, as stated above, we have not tried the market, but feel assured that if the price should ·be less than $33, you would give us the benefit of the difference." On November 26, two days thereafter, the Stave Company wrote to the defendant the following letter: "Your telegram dated the 24th received last Saturday night, and reads, 'Yes, we are depending on you for staves at $33, if that is the best you can do.' We thank you for this information and will be governed accordingly, and in the meantime we would like for you to advise us as near as you can how many staves you will require. The new price will go into effect December 1st."

In the view we take of this correspondence up to this point, the

remainder of the correspondence between the parties becomes immaterial, for we have concluded that these four communications between the parties show a complete contract, both as to price and as to quantity. The first telegram and letter, and the reply thereto, left the question of price undetermined; for the Stave Company, though stating that the price would not be less than $33, did not unequivocally agree to furnish the staves at that price. It simply stated that the price would not be less than $33. But the Cooperage Company accepted the offer (or rather made a counter proposition to accept the offer) to furnish staves to supply the next season's demand at $33, if that was the best that the Stave Company could do; and in reply to this acceptance of the staves (or counter proposition to take them) at that price, the Stave Company said, "We thank you for this information,"—that the Cooperage Company will accept the staves from the Stave Company at $33, —"and *will be governed accordingly.*" We think that these words "will be governed accordingly," taken in connection with the context, are sufficient to express an acceptance of the Cooperage Company's counter proposition. The price was therefore agreed upon, and the quantity of staves to be furnished at this price fixed as being the number that would supply the Cooperage Company for the next season; and, in order that the Stave Company might arrange to furnish the necessary supply, the further inquiry was made by it of the Cooperage Company as to the number of staves it would require for the season, and it stated that the new price for the staves would go into effect December 1. Having, therefore, agreed to furnish at the stipulated price to the Cooperage Company the supply of staves for the next season, the number of staves that would be required for the supply was immaterial as affecting the contract; and the information as to the number was only for the convenience of the Stave Company. We therefore conclude, that the correspondence between the parties makes a complete contract; that the Stave Company offered to furnish to the Cooperage Company for the next season such quantity as would be needed by the latter in the manufacture of barrels for that season, at the price of $33 per thousand, and that the Cooperage Company agreed to accept this offer and to pay for the staves at that price per thousand. A case very much in point is that of the *McCaw Manufacturing Co. v. Felder,* 115 *Ga.* 408 (41 S. E. 664).

If, therefore, there was a binding contract between the parties, and the defendant has, by reason of the breach of the contract by the plaintiff, suffered damage, such damage can be properly pleaded as a counter-claim, and the judgment of the court below in sustaining the demurrer to the plea and directing a verdict for the plaintiff, was erroneous, and must be set aside.

*Judgment reversed.*