### BOSS MFG. CO. v. PAYNE GLOVE CO.*
### No. 9794.

Circuit Court of Appeals, Eighth Circuit.

May 24, 1934.

STONE, Circuit Judge, dissenting.

———◆———

*Rehearing denied July 9, 1934.

Philip M. Aitken, of Lincoln, Neb., and Oliver R. Barrett, of Chicago, Ill. (Woods, Woods & Aitken, of Lincoln, Neb., on the brief), for appellant.

Don W. Stewart, of Lincoln, Neb. (Stewart, Stewart & Whitworth, of Lincoln, Neb., on the brief), for appellee.

Before STONE and SANBORN, Circuit Judges, and WYMAN, District Judge.

WYMAN, District Judge.

This action was instituted in the District Court of Nebraska by the Payne Glove Company, a Corporation, as Plaintiff, v. Boss Manufacturing Company, a Corporation, as Defendant, to recover damages alleged to have been sustained by the plaintiff company as a result of certain alleged discrimination in price between different purchasers of certain cotton fabric husking gloves and husking mittens in violation of the provisions of the act of Congress commonly known as the Clayton Act (38 Stat. 730). For convenience the parties will be referred to as plaintiff and defendant as in the court below.

The essential facts as disclosed by the record are as follows: Plaintiff is a Nebraska corporation, with its principal place of business at Lincoln, Neb., where it is engaged in the manufacture of cotton fabric husking or working gloves and mittens for sale in the state of Nebraska and adjoining states. Defendant is an Illinois corporation, engaged in a similar business, with its principal place of business at Kewanee, in the state of Illinois, and it also operates several branch factories at different points in the United States, the products of which are sold and offered for sale throughout the United States.

Among the products of the defendant company are a twelve-ounce, two-thumb, standard size, welt seam, nap outside, knit wrist, cotton flannel husking mitten; also an eleven-ounce husking glove of similar material and construction, which said gloves and mittens were announced in December, 1929, by the defendant as a part of its line for the 1930 season, as Nos. 376 and 734, respectively, at a price of $1.55 per dozen pair. At about the same time, plaintiff announced its line and price list for the season of 1930, which included a twelve-ounce, cotton flannel, two-thumb husking mitten known as No. 376, similar as to material and construction to the defendant's product No. 734. Plaintiff's line also included an eleven-ounce, cotton flannel husking glove, known as No. 311, similar to defendant's product No. 376, both of which gloves and mittens were priced at $1.50 per dozen pair. Above-mentioned commodities were all made of the best grade of Eastern flannel and were all practically the same in workmanship and construction. In February, 1930, the defendant announced a special cotton flannel husking mitten known as No. 200, and the special cotton flannel husking glove known as No. 300, which it offered for sale and sold at the price of $1.32½ per dozen pair. These special gloves and mittens were similar in construction and appearance to the defendant's regular products known as Nos. 376 and 734, respectively, but they were made of a cheaper grade of material known as Southern flannel, the workmen employed in their construction were less expert than those who worked on the manufacture of the regular products, and they were less rigidly inspected. All of the salesmen of the defendant company were supplied with samples of both the regular or higher priced products and the special or lower priced products, and the special or lower priced gloves and mittens were offered for sale in the month of March, 1930, to wholesalers throughout the country, and sales were made to wholesalers in Lincoln, Neb., and other cities in that vicinity, some of whom were customers of the plaintiff company.

After defendant had placed its special or lower priced gloves and mittens on the market, plaintiff reduced the price on its products Nos. 376 and 311 to $1.32½ per dozen pair, which resulted in financial loss to plaintiff.

The case was tried to a jury, and at the conclusion of the evidence the defendant moved for a directed verdict in its favor on the ground of the insufficiency of the evidence, which motion was denied by the court and exception allowed to the defendant. The jury returned a verdict in favor of the plaintiff, and the case comes to this court upon appeal from the judgment thereafter entered.

While there are several assignments of error, the real question upon which the case must turn is that raised by assignment of error No. 1, which challenges the action of the trial court in overruling defendant's motion for a directed verdict. If the record discloses any substantial evidence to support the verdict of the jury, then there was no error in the ruling complained of.

As indicated above, the action is based upon an alleged violation of section 2 of the so-

called Clayton Act (title 15, § 13, USCA), which, in so far as applicable, reads as follows:

"It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly to discriminate in price between different purchasers of commodities, which commodities are sold for use, consumption, or resale within the United States or any Territory thereof * * * where the effect of such discrimination may be to substantially lessen competition or tend to create a monopoly in any line of commerce: Provided, That nothing herein contained shall prevent discrimination in price between purchasers of commodities on account of differences in the grade, quality, or quantity of the commodity sold, or that makes only due allowance for difference in the cost of selling or transportation, or discrimination in price in the same or different communities made in good faith to meet competition: And provided further, That nothing herein contained shall prevent persons engaged in selling goods, wares, or merchandise in commerce from selecting their own customers in bona fide transactions and not in restraint of trade."

■ The question for determination is whether or not the record discloses any substantial evidence to support a verdict in favor of the plaintiff.

Passing for the present the question as to whether or not there was, in fact, any discrimination in price between purchasers, does the record disclose any substantial evidence in support of the finding that there was no sufficient difference in grade or quality between the regular and special products to justify a discrimination in price under the proviso of the statute? The undisputed evidence shows conclusively that the regular mittens and gloves, Nos. 734 and 376, respectively, were made of the best grade of Eastern flannel; that the special mittens and gloves, Nos. 200 and 300, respectively, were made of Southern flannel, which is an inferior grade of flannel, cheaper in price, and less durable than the Eastern flannel; that the wrists of the special mittens and gloves were made of a poorer lot of knit tubing; that the special products were made by workmen of less experience; and that the inspection of these products was not as rigidly made as was the inspection of the regular gloves and mittens. The only evidence in the record which could be said to in any way support a finding of no difference in grade or quality between the so-called regular and special products is the testimony of Mr. Hartmann, president of the plaintiff company, and several other dealers in cotton flannel husking gloves and mittens, each of whom, after examination and comparison of samples of the special Nos. 200 and 300, and the regular Nos. 734 and 376, testified as an expert that the so-called Nos. 200 and 300 appeared to be the same or that they were, in the opinion of the witness, identical, or that there was no difference so far as the witness could observe between them and the regular Nos. 734 and 376. In view of the physical facts as to the difference in material and construction between the special Nos. 200 and 300 and the regular product, as disclosed by the undisputed evidence in the record, the opinion testimony of the several witnesses to the effect that there was no difference between the two commodities cannot be regarded as a substantial evidentiary showing. The undisputed physical facts conclusively show that there was a difference in the grade and quality of the two sets of mittens and gloves, and, in view of the fact that the difference in price was only 22½ cents per dozen pair, which would amount to less than 2 cents a pair, in the absence of substantial evidence to the contrary, the difference between the commodities would justify the discrimination in price.

Is there substantial evidence in the record which tends to show a discrimination in price between purchasers? A careful examination of the record convinces us that this question must be answered in the negative. While the evidence shows that the Boss Manufacturing Company offered and sold its special Nos. 200 and 300 to wholesalers at Lincoln, Omaha, Kansas City, and other points in the trade territory of the plaintiff company, it also shows that each of the defendant's salesmen was provided with samples of both the regular and special numbers; that all of said commodities were offered for sale, and equal opportunity given to all prospective purchasers to buy any or all of said gloves and mittens. There is nothing in the record upon which to base a conclusion that there was any discrimination by defendant between prospective purchasers. Evidence tending to show the sale of Nos. 200 and 300 to a wholesaler at Lincoln, Neb., at $1.32½ per dozen pairs, and to sell Nos. 734 and 376 to another wholesaler at some other point in the United States at $1.55 per dozen pair, would not, in the absence of proof that the products were substantially the same, and the purchaser of the higher priced commodity was not permitted to purchase that of the lower price, sup-

port a finding of a discrimination between purchasers condemned by the statute.

There being no substantial evidence in the record tending to show discrimination between purchasers, the denial of the defendant's motion for a directed verdict constitutes error necessitating a reversal of the judgment.

In view of the foregoing conclusions we deem it unnecessary to consider the remaining assignments of error.

The judgment is therefore reversed, and the case remanded.

SANBORN, Circuit Judge (concurring).

I agree that the evidence was insufficient to justify the conclusion that there was no difference between the special gloves and the regular gloves offered by the defendant to the trade and the conclusion that the defendant had offered the special gloves solely to the customers of the plaintiff or in the territory where they would do the plaintiff the most harm, and not to the trade generally. However, I think the judgment should be reversed only because of the insufficiency of the evidence to establish territorial discrimination. Had that been established, then I think that the jury might have found from the evidence that the differences between the specials and the regulars were so insubstantial as to indicate that the specials were being offered to a portion of the trade for the purpose of injuring the plaintiff's business and thus lessening competition. While circumstances established by the evidence create a strong suspicion that the defendant may have put out these special gloves for the purpose of injuring the plaintiff's business, as the plaintiff believes, they are not necessarily inconsistent with a hypothesis that these special gloves were offered generally to the trade, and, if they were so offered, then, even though the differences were slight, there was no violation of the Clayton Act, since all purchasers had the opportunity to purchase the same gloves at the same price. The vital defect in the plaintiff's case, as I see it, is in its failure to take the question of territorial discrimination out of the realm of speculation and conjecture. I therefore concur.

STONE, Circuit Judge (dissenting).

I am unfortunate in not being able to see the evidence in the same way as the majority of the court. While appellant attacks the sufficiency of the petition and also the admission of several pieces of evidence, the main controversy here is the sufficiency of the evidence. This being true, it is not useful in a dissent to discuss the minor issues more than to state that I find no basis for the challenges of the petition or of the admissions of evidence.

The attacks upon the sufficiency of the evidence are (1) that it failed to show discrimination in prices between different purchasers; (2) that it showed differences in grade and quality of the gloves, justifying price differences; (3) that it failed to show the effect would be lessening of competition or tendency to create monopoly.

(1) As to discrimination in prices between different customers, there was evidence which, if believed by the jury, would justify a conclusion that the cheaper glove was being offered only to customers of appellee with the statement that there was only a limited quantity and that purchases must be made immediately. The natural effect of this would be to stock up such customers, resulting in loss of business to appellee, while the regular customers of appellant were not informed of this cheaper glove and would continue to pay the regular price for substantially the same glove. Where appellant's own customers did find out, from other sources, of the cheaper glove, it seems they could get it, but that glove was offered to and pushed upon a preferred line of purchasers—customers of appellee.

(2) Much of the evidence in the record is devoted to the question of whether the cheaper glove ($1.32½) was different in grade or quality from the higher priced glove ($1.55). I cannot read the evidence as to this as being undisputed. That of appellant tended to show many differences—such as in the grade of flannel used, in the grade of wrist tubing, in the grade of material used for the thumb patch, in the care and costs of manufacture (cutting, stitching, character of workmen, and of inspection). However, appellee countered with evidence from experienced persons that the two gloves were substantially the same. This raised a conflict in the testimony.

(3) As to competition and monopoly, appellee showed that appellant was the largest concern of its kind; that appellee was a small concern with more limited trade territory; that the cheaper glove was offered by appellant to appellee's customers at a price below appellee's cost of manufacture; that this offer was concentrated on such customers. If these things be true (as the jury might find them to be), not only the natural, but the inevitable, result would be to lessen competition by driving appellee out of business and

772

also thereby and to that extent tend to create a monopoly in appellant.

I think that the evidence was sufficient in the respects in which it is attacked, that there was no error in the trial, and that the judgment should be affirmed.