**PITTSBURGH PLATE GLASS CO. v. JARRETT.**

**No. 141.**

District Court, Middle District Georgia, Macon Division.

Jan. 20, 1942.

Wm. A. Fuller, of Atlanta, Ga., for plaintiff.

Anderson, Anderson & Walker, of Macon, Ga. (R. L. Anderson, of Macon, Ga., of counsel), for defendant.

DEAVER, District Judge.

Plaintiff filed suit on the following note:

"$8800.00                    Jan. 10, 1935

For value received I promise to pay Pittsburgh Plate Glass Co. or order, the sum of Eight Thousand eight hundred Dollars, with interest from this date at the rate of — per cent per annum, at Atlanta, Ga., in monthly installments, payable as follows, to-wit: $100 dollars on the 25 day of Jany. 1935, and $100.00 on Feby. 25, Mar. 25 & Apr. 25, 1935

$150.00 on May 25, June 25, July 25, Aug. 25, Sep. 25 & Oct. 25, 1935

$100.00 " Nov. 25 & Dec. 25, 1935. Balance to be put into new note Jan. 1, 1936.

"Jarrett Paint & Glass Co.
"H. K. Jarrett."

The petition set out certain payments on the note with dates and amounts and, as finally amended, asked judgment for the balance of $4,275.10 with interest at 7 per cent.

Defendant filed a motion to strike on the ground that the suit is premature in that, as appears from the petition, all installments designated in the note have been paid and no other installment has become due.

In his answer defendant says payments on the note were discontinued with the acquiescence of plaintiff because defendant was making payments on another series of notes owed to plaintiff by defendant and that, by an understanding between the parties, no further payments were to be required of defendant on the note sued on so long as satisfactory progress was being made toward the liquidation of said other indebtedness.

The answer contains also a cross action based upon two grounds. There is attached to the answer the following contract between the parties:

."Profit Sharing Plan
for
"Pittsburgh Proof Products' Agencies

"For the purpose of advancing the mutual interest of Jarrett Paint & Glass Co. distributor of Pittsburgh Proof Products at Macon Ga., hereinafter called the dealer, and the Pittsburgh Plate Glass Company, a Pennsylvania Corporation, hereinafter called the Company, this agreement as herein set forth is entered into by both parties.

"1. The Dealer agrees that in order to improve his position as distributor of Pittsburgh Proof Products through increased volume and to participate in the profit sharing plan herein provided he will maintain adequate and well assorted stocks of all such Pittsburgh Proof Products as are needed to properly serve the requirements of his trade, to aggressively push their sale and to take the fullest possible advantage of the Company's advertising and other cooperative efforts to that end.

"2. When the dealer buys Pittsburgh Proof Products within a period of twelve months at the Company's dealer prices and discounts in effect at the time of sale and as shown on the Company's printed price lists, and pays for them in accordance with the terms as shown on the invoice, the Company, at the end of each twelve months' period, will set up profits for the dealer on its books in accordance with the following schedules:

"On total net twelve months purchases amounting to $10,000.00, but less than $15,-000.00

"10% on Group 'A' Products
"10% on Group 'B' Products

"3. It is mutually agreed and understood that the dealer's purchases of Class 'C' Products also of White Lead, Linseed Oil, Turpentine, Sundries and other items not specified in the lists of 'A' and 'B' Products are not to be included in establishing the total purchases of Pittsburgh Proof Products, and are not subject to the Profit Sharing Rates.

"4. It is agreed that the Company may terminate this Profit Sharing Agreement at any time should the dealer fail to comply with the terms of sale, or

should he fail to cooperate fully as dealer distributor of Pittsburgh Proof Products.

"5. It is agreed that the Company is not liable for any delays or contingencies beyond its reasonable control.

"The Company agrees to confine the sale of Proof Products to the above dealer for Macon, Ga.

"Pittsburgh Plate Glass Company

"Date—       By J. E. Ingram
"Jan. 8, 1930    Warehouse Manager.
"Warehouse—Atlanta   Jarrett Paint & Glass Co.
                Dealer Distributor.
"Salesman—E. B. McDougal   By—H. K. Jarrett."

Defendant says that on March 1, 1941, plaintiff, over the protest of defendant, opened in Macon a branch store for the sale of its own products to the trade in Macon and thereby, to the damage of defendant, breached the terms of the contract which provides that "The Company agrees to confine the sale of Proof Products to the above dealer for Macon, Georgia."

As a second ground of cross action defendant alleges that for eighteen years he had purchased from plaintiff its products and sold them in Macon as sole local dealer; that on March 1, 1941, over the protest of defendant, plaintiff opened said branch store and has been selling its products in competition with defendant at less than the prices at which same had been previously sold in Macon and at prices less than defendant, as local dealer, could sell them profitably and has made it unprofitable for defendant to continue to purchase and sell plaintiff's products in Macon, and has thus eliminated defendant as a competitor; that plaintiff was engaged in commerce and its conduct was in violation of § 2(a) of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C.A. § 13(a). Treble damages are asked under § 4 of the Clayton Act, 15 U.S.C.A. § 15.

Plaintiff moved to strike the first cause of the cross action on the ground that the contract was illegal, unilateral, indefinite as to duration and as to quantity of products to be bought and sold, and to strike the second cause of cross action on the ground that the facts alleged constitute no violation of either the Clayton Act or the Robinson-Patman Act.

Plaintiff further moved for summary judgment.

1. The suit was not premature.

■ (a) The note was payable in monthly installments which in varying amounts were set out up to December, 1935, "balance to be put into new note Jan. 1, 1936". Even if the note required the balance to be put into a series of monthly notes, the amount could not be determined, because the prior installments were not in equal amounts. But this note calls for balance to be put in one note without designating any due date.

The burden was on the maker to give or tender the new note. Geer v. Grow, 31 Ga.App. 254, 120 S.E. 426.

■ A note in which no time for payment is expressed is payable on demand and is due immediately. Georgia Code, § 14-207; Love v. Perry, 19 Ga.App. 86, 90 S.E. 978; Exchange Bank v. Odum, 19 Ga.App. 52, 90 S.E. 977; American Wholesale Corp. v. Bryant, 5 Cir., 2 F.2d 31. No new note having been given or tendered and no due date having been expressed for the balance, it became due on Jan. 1, 1936, and bore interest from the date of the note.

■ (b) The alleged agreement not to require payments as long as defendant was paying on other notes, if made, was without consideration and void. Lee v. Wilmington Savings Bank, 31 Ga.App. 327, 120 S.E. 689; Holmes v. First Natl. Bank, 19 Ga.App. 810, 92 S.E. 298.

2. Did the opening of a branch store in Macon by plaintiff give defendant a right of action for breach of the exclusive sale contract?

(a) Quantity of goods.

■ A contract for the purchase of such quantity of goods as will meet the needs or requirements of the purchaser for a given purpose is not wanting in mutuality on the ground that no definite quantity is stated, if the quantity to meet such needs or requirements is ascertainable with reasonable accuracy. Pittsburgh Plate Glass Co. v. H. Neuer Glass Co., 6 Cir., 253 F. 161; Oak City Cooperage Co. v. Kennedy Stave & Cooperage Co., 4 Ga. App. 344, 61 S.E. 499; McCaw Mfg. Co. v. Felder & Rountree, 115 Ga. 408(2), 41 S.E. 664; Fontaine v. Baxley, 90 Ga. 416, 17 S.E. 1015; Mills-Morris Co. v.

Champion Spark Plug Co., 6 Cir., 7 F.2d 38; Cold Blast Transp. Co. v. Kansas City Bolt & Nut Co., 8 Cir., 114 F. 77, 57 L.R.A. 696; Harrington Bros. Inc., v. City of New York et al., D.C., 51 F.2d 503; Albany Power Co. v. City of Albany, 133 Ga. 375, 381, 65 S.E. 886; Texas Co. v. Pensacola Maritime Corp., 5 Cir., 279 F. 19; United States v. Purcell Envelope Co., 249 U.S. 313, 39 S.Ct. 300, 63 L.Ed. 620. So, with agreement to maintain adequate supply for needs. Ken-Rad Corp. v. R. C. Bohannan, Inc., 6 Cir., 80 F.2d 251.

■ In a requirements contract, an agreement by the seller to sell imports an agreement by the buyer to buy. Fontaine v. Baxley, 90 Ga. 416, 426, 17 S.E. 1015; Klipstein & Co. v. Allen, C.C., 123 F. 992. And an agreement by one party to buy binds the other party to sell. Ellis v. Dodge Bros., 5 Cir., 246 F. 764; Kentucky Tobacco Products Co. v. Lucas, Collector, D.C., 5 F.2d 723; Mills-Morris Co. v. Champion Spark Plug Co., 6 Cir., 7 F.2d 38(1).

■ It follows that the contract in this case is not void for indefinite statement of quantity.

(b) Duration of contract.

The contract in this case does not state any time during which it is to continue. The decided cases deal with contracts which provide no time for their duration and with contracts which reserve the right to cancel and are not harmonious. Some of them will be referred to.

In Electric Railway Co. of Savannah v. Tennessee Coal, Iron & Railway Co., 98 Ga. 189, 26 S.E. 741, the court held that a contract for three carloads of coal a day for a period not specified could be terminated at the will of either party, but continued in force until one party gave notice. However, in such case, it is clear, from the decision in Lederle v. City of Atlanta, 164 Ga. 440(2), 138 S.E. 910, that the contract ends when notice is given and not within a reasonable time after notice. See Buggs v. Ford Motor Co., 7 Cir., 113 F.2d 618; Silbernagel v. Hirsch Distilling Co., 8 Cir., 99 F.2d 829.

In National Surety Co. v. City of Atlanta, 151 Ga. 123, 106 S.E. 179, it was held that "Where, in response to an advertisement by a municipality for bids for the furnishing and delivery of coal for a period of 12 months, a bid is made to furnish a specified number of tons, and a contract is afterwards entered into for the delivery of so many tons per month at a given price and at a stated place, but it is expressly stipulated in the contract that the purchaser shall be at liberty at any time by a written notice to order a suspension of deliveries of the coal and to refuse to accept further deliveries, the element of mutuality is wanting in the contract."

In that case the coal company refused to perform. The court said (page 125 of 151 Ga., page 181 of 106 S.E.), "A contract for the purchase of goods to be delivered in lots throughout a period of 12 months, which gives the purchaser the right at any time to serve notice upon the party contracting to deliver the goods to suspend deliveries, and stipulates that upon giving this notice to suspend deliveries the purchaser will be 'at liberty to refuse to accept' any further deliveries after 48 hours from the date of such written notice, is not a contract binding upon the purchaser. If the purchaser can at pleasure cancel an agreement to purchase, he has incurred no obligation; and to render a contract mutual, the obligation must be upon both parties."

In the Electric Ry. Co. case, supra, the contract was held valid and in the National Surety Co. case, supra, the contract was held void. In the former case the law itself wrote into the contract something which became as much a part of the contract as if it had been inserted by the parties themselves. The contract, therefore, became one to take three cars a day until notice was given. The provision as to notice was written in simply to mark the duration of the contract. Thus, the contract had a duration and there was no right to terminate it until the expiration of its term so designated. In the latter case, the contract was "to deliver to the city coal in certain carload quantities at certain intervals during a period of 12 months", giving the purchaser the right to stop deliveries by giving 48 hours' notice. There the duration was 12 months and the right to cancel before the end of the term was held to destroy mutuality.

In Ellis v. Dodge Bros., 5 Cir., 246 F. 764, the contract was dated July 29, 1914, and called for so many cars per month from October of that year to June of the following year, inclusive, and provided that "This agreement shall expire by limitation June 30, 1915, or may be cancelled

by the manufacturer or dealer upon 15 days' written notice." The court held the contract effective until notice. If that provision means that the contract is to continue until 15 days after notice, not exceeding 12 months, it might come within the Electric Ry. Co. case; but if it means the contract is to run for 12 months, with the right reserved to cancel within the term, it would apparently come within the National Surety Co. case. See Ford Motor Co. v. Kirkmyer Motor Co., 4 Cir., 65 F. 2d 1001, 1004, holding that contract awarding automobile dealership and providing for cancellation at will by either party, imposes no liability on seller if he terminates it or refuses to make sales.

In Miami Coca-Cola Bottling Co. v. Orange Crush Co., 5 Cir., 296 F. 693, that court held, "A contract, in form a license, whereby defendant granted to complainant the exclusive right to manufacture a certain drink under defendant's trademark, defendant to supply its concentrate at certain prices, was void for lack of mutuality, where the license granted contained a provision to the effect that the complainant might at any time cancel the contract."

In the opinion, the court said, "We agree with the District Judge that the contract was void for lack of mutuality. It may be conceded that the appellee is liable to the appellant for damages for the period during which the contract was performed; but for such damages the appellant has an adequate remedy at law. So far, however, as the contract remains executory, it is not binding, since it can be terminated at the will of one of the parties to it. The consideration was a promise for a promise. But the appellant did not promise to do anything, and could at any time cancel the contract. According to the great weight of authority such a contract is unenforceable."

It was held in the Eighth Circuit, Du Pont de Nemours & Co. v. Claiborne-Reno Co., 64 F.2d 224, 89 A.L.R. 238, that a sales agency contract giving distributor sole right to sell manufacturer's products, but not providing any definite time for the contract to run, was terminable at will.

A provision that an agency may be terminated on specified grounds does not imply that it cannot be terminated at will. See Stier v. Imperial Life Ins. Co., C.C., 58 F. 843; Willcox & Gibbs Sewing-Machine Co. v. Ewing, 141 U.S. 627, 12 S.Ct. 94, 35 L.Ed. 882. That principle applies to paragraph numbered 4 of the contract in this case.

In Pepsi-Cola Co. v. Wright, 187 Ga. 723, 728, 2 S.E.2d 73, 77, the court said "A parol promise that if the * * * first party would purchase from the * * * second party 'advertising signs and posters of said product at an expense * * * of $1100, that he would be the sole distributor of Pepsi-Cola in the City of Atlanta and vicinity of Atlanta,' the condition being performed by the first party, was indefinite as to the time he should act as sole distributor, and consequently was unilateral."

In Velie Motor Car Co. v. Kopmeier Motor Car Co., 7 Cir., 194 F. 324, the court held a contract void, whether one of sale or agency, in which contract an automobile manufacturer granted to dealer for a year the exclusive right to sell its cars, agreed to invoice cars at stated prices, and required dealer to order at least 50 cars during the year, but reserved the right to cancel the contract at any time.

In Dunn & McCarthy, Inc., v. Pinkston, 47 Ga.App. 514(3), 170 S.E. 922, it was held that: "Where from time to time a manufacturer has sold and delivered the manufactured product in wholesale lots to one retail dealer in a designated territory, under an agreement to give him the exclusive handling of the product in that territory, and where the dealer specially advertises the goods and recommends them to the trade as the goods of the manufacturer, there arises a contract between the parties by which the manufacturer has given to the dealer, during the period within which they do business with each other, the exclusive handling of the manufacturer's goods of the character sold within the designated territory."

In that case it was necessary to allege a universal custom to give notice of termination and, except for the custom, the contract could have been terminated at will without notice. See also, Chappell v. F. A. D. Andrea, Inc., 41 Ga.App. 413, 417, 153 S.E. 218. In this case no custom is alleged.

However, even if notice was necessary, defendant in this case had notice. If this case is controlled by the Electric Ry. Co. case, supra, no written notice is required and the contract was at an end when defendant had notice that the plain-

tiff would no longer sell exclusively to him. Defendant alleges in his cross action that the branch store was opened over his protest. The parties, therefore, had up the question of opening the branch store and defendant had notice of the intention of plaintiff to terminate the exclusive sale contract. No formal notice is required; it may be either in the form of an actual declaration or acts brought to defendant's knowledge amounting in law to such a declaration. See 17 C.J.S., Contracts, p. 917, § 435.

Under the foregoing authorities, if the contract in this case, for failure to specify any definite time for its continuance (1) was void, then there was no contract to breach, (2) was valid but terminable without notice, then there was no breach, (3) was valid and terminable only upon notice, still there was no breach because defendant had notice.

(c) Illegality of contract.

The profit sharing plan was illegal under 15 U.S.C.A. § 13(c). See Biddle Purchasing Co. v. Federal Trade Commission, 2 Cir., 96 F.2d 687.

An act done in violation of statute is void. Waskey v. Hammer, 223 U.S. 85, 32 S.Ct. 187, 56 L.Ed. 359. A contract for the doing of an illegal act is void and unenforceable and imposes no liability in damages for nonperformance. Sage v. Hampe, 235 U.S. 99, 35 S.Ct. 94, 59 L.Ed. 147. A continuing prior contract comes within the Clayton Act. Elliott Mach. Co. v. Center, D.C., 227 F. 124; United States v. United Shoe Mach. Co., D.C., 227 F. 507; Motion Picture Patents Co. v. Universal Film Mfg. Co., 2 Cir., 255 F. 398. A contract by a carrier to issue a pass as compensation for injuries, though legal when made, could not be enforced against carrier after enactment of statute making contract illegal. Louisville & N. R. R. v. Mottley, 219 U.S. 467, 31 S.Ct. 265, 55 L.Ed. 297, 34 L.R.A.,N.S., 671. Acts done under prior legal contract, after a statute makes it illegal, are done in violation of it. United States v. Trans-Missouri Freight Ass'n, 166 U.S. 290, 17 S.Ct. 540, 41 L.Ed. 1007. The profit sharing plan, therefore, became illegal when 15 U.S.C.A. § 13(c) went into effect.

Defendant contends that, even if the profit sharing plan is illegal, it is severable and that the remainder of the contract is enforceable.

Georgia Code, § 20-112 provides: "Entire or severable contracts.—A contract may be either entire or severable. In the former, the whole contract stands or falls together. In the latter, the failure of a distinct part does not void the remainder. The character of the contract in such case is determined by the intention of the parties."

Code, § 20-501 provides: "Contracts to do immoral or illegal thing.—A contract to do an immoral or illegal thing is void. If the contract be severable, that which is legal will not be annulled by that which is illegal."

Code, § 20-305 provides: "Considerations good in part and bad in part.—If the consideration be good in part and void in part, the promise will be sustained or not, according as it is entire or severable, as hereinafter prescribed. If the consideration be illegal in whole or in part, the whole promise fails."

"A divisible contract is one the performance of which is divided into different groups, each set embracing performances which are the agreed exchange for each other." 12 Am.Jur. p. 870, § 315.

"Promises mutual to the extent that each affords the sole consideration to the other will not be construed as independent, but will, in the absence of clear indications to the contrary, be taken as dependent one upon the other; and while, ordinarily, dependent covenants are such as mutually afford to the other the whole consideration, still the stipulations and the circumstances of the contract may be such as to render covenants mutual and dependent even though one of them affords to the other only a part of its consideration." Brenard Mfg. Co. v. Kingston Supply Co., 22 Ga. App. 280, 95 S.E. 1028.

A contract to convey land for certain sum of money and certain services which were illegal was void, each part of the consideration going to the whole promise. Hazelton v. Sheckels, 202 U.S. 71, 26 S.Ct. 567, 50 L.Ed. 939, 6 Ann.Cas. 217.

Where coal mining company agreed to issue stock to president of sales company and to give sales company exclusive right to sell coal, sales company to make certain advances, the part of the contract giving exclusive agency was not separable, so as to be enforced, where agreement to issue stock was illegal. Detroit-Kentucky Coal Co. v. Bickett Coal Co., 6 Cir., 251 F. 542.

A contract between husband and wife settling claim for alimony and illegally agreeing not to contest divorce was entire and did not bar wife from claiming alimony in divorce proceeding. The illegal agreement was part of the consideration for the alimony promise. Law v. Law, 186 Ga. 113, 197 S.E. 272.

Sale of newspaper and good will and agreement not to conduct another paper in same county were parts of one contract and covered by the consideration. McAuliffe v. Vaughan, 135 Ga. 852, 858, 70 S.E. 322, 32 L.R.A.,N.S., 255, Ann.Cas. 1912A, 290.

A note, given as compensation for personal injury which was a crime and to suppress prosecution, is void. Chandler v. Johnson et al., 39 Ga. 85. Legal part of the consideration could not be separated from the illegal. Frick & Co. v. Moore, 82 Ga. 159, 8 S.E. 80; Small v. Williams, 87 Ga. 681, 682, 13 S.E. 589; Sanders et al. v. McKee, 145 Ga. 507, 89 S.E. 484.

■ In this case, no promise in the contract by one party can be set opposite any promise by the other, so as to make one promise the consideration for the other, but each promise on one side is a part of the consideration for each promise on the other. The contract is entire and the promise to share profits goes to each promise made by the defendant. The agreement to share profits being illegal, the entire contract fails.

The defendant declares on the single promise to sell to him alone. But that promise is so indivisibly connected with the rest of the contract that it cannot be separately enforced. Curtiss Candy Co. v. Silberman et al., 6 Cir., 45 F.2d 451(20); Moon Motor Car Co. of New York v. Moon Motor Car Co., Inc., 2 Cir., 29 F.2d 34(2); White Co. v. American Motor-Car Co., 11 Ga.App. 285, 75 S.E. 345.

■ A party cannot show only such part of an entire agreement as is legal and sue upon that alone. 12 Am.Jur. p. 739, § 220, citing Continental, etc., Co. v. Lewis Voight & Sons Co., 6 Cir., 148 F. 939, 948, 19 L.R.A.,N.S., 143, affirmed 212 U.S. 227, 29 S.Ct. 280, 53 L.Ed. 486. Even if the promise to sell exclusively to defendant could be separated from the rest of the contract, then, standing alone, it would itself be unilateral because it would not bind defendant to buy any goods. Huggins v. Southeastern Cement Co., 121 Ga. 311, 48

S.E. 933; Mountain City Mill Co. v. Cobb, 124 Ga. 937, 53 S.E. 458; Miami Butterine Co. v. Frankel et al., 190 Ga. 88, 8 S.E.2d 398. If defendant in cross action must rely upon illegal contract, he cannot recover. Mechanics' Realty Co. v. Leva, Adm'r, 16 Ga.App. 7(2), 84 S.E. 222; Wood v. First Natl. Fire Ins. Co., 21 Ga.App. 333, 335, 94 S.E. 622, 735; Mathews v. Wayne Junction Trust Co., D.C., 197 F. 237; Hookway v. First Natl. Bank, 8 Cir., 36 F.2d 166.

Defendant cites Stallings v. Johnson, 27 Ga. 564, page 572, containing a statement that an agreement to extend time for payment made for two considerations, one legal and the other (to pay usury) illegal, was valid, it being said that if part of the consideration is illegal, the party to be benefitted could repudiate the contract or not, as he pleased, and, if he did not repudiate it, the contract was not void, but was in the same category as other contracts in which there is a partial failure of consideration. That case was decided before our first code and the statement referred to was probably obiter dictum. In Brown v. Baer, 79 Ga. 347, 5 S.E. 72, decided after the adoption of the code, the court held:

"In consideration of a promise by B. to A. to pay the latter 7 per cent. interest, and also a debt due him by others, B.'s promise thus amounting to an agreement to pay usury, A. agreed to lend B. money with which to purchase certain goods about to be sold at public outcry, for cash, by a receiver, if sold below a certain price. On the faith of this promise by A., B. bid off the goods at less than the price mentioned. A. refused to lend the money. B., consequently, could not comply with his bid, and the goods were immediately resold by the receiver to another for less than B.'s bid, and he holds B. responsible for the difference, and has sued B. for the same, the goods being actually worth more than B.'s bid. Held, that A.'s breach of the contract herein stated gives B. no right of action for damages against A."

On page 353 of 79 Ga., on page 74 of 5 S.E., the court said:

"Undoubtedly, in this case, the main moving consideration which induced Baer to promise to lend the money was the agreement by Brown to pay him the $500 due him by Brown Bros. This is a most natural conclusion, and it is not at all reasonable to suppose he would have been willing to lend his money at simply 7 per cent. The section of the Code, and other authorities

above cited settle conclusively the question under consideration, unless the word 'illegal' is used therein in a restricted sense, and intended to apply only to contracts which are vicious, criminal, or forbidden by public policy. Our statute designates the taking of usury as 'an unlawful transaction,' and it would not be a strained construction to hold that the word 'illegal,' in the above-mentioned section of the Code applies to such a transaction. It is not necessary, however, in this case, to determine definitely whether it does or not.

"The contract between Baer and Brown is bad for want of mutuality. If it had been fully executed, and Brown had actually repaid to Baer the principal, with interest at 7 per cent, and also the $500, there can be no doubt that Brown could recover back from Baer every dollar paid him for the use of the money above what would be lawful interest; and, as the contract was not executed, Baer would not be allowed to enforce it specifically against Brown, if he objected, for the reason that, when the specific performance of a contract is decreed, it must necessarily be performed in all its parts; and this would not be done, in case of such a contract as this, at Baer's instance against Brown's consent, because the latter would thus be compelled unlawfully to pay usurious interest. As the law would not aid Baer in availing himself of the benefit of all the stipulations made in his favor, it would seem that it should not aid Brown in attempting to enforce the contract against Baer. If, then, an executory contract is not mutually and legally binding, in all its parts, between the parties, so that either would be allowed to fully and completely enforce it against the other, it follows that for a breach thereof, while the whole contract is yet executory, neither can sustain an action for damages."

▇▇▇ Our code says that if a part of the consideration is illegal, the whole promise fails and in the present case the agreement to share profits was a part of the consideration for every promise by defendant. Under the case last cited, the present contract was wanting in mutuality and its breach would afford no cause of action for damages. See Harrison v. Stiles, 95 Ga. 264, 22 S.E. 536.

▇▇▇ If when the contract became illegal the defendant could have waived the illegal part of the agreement, the burden was on him to do so at that time and even then the contract would have become a new con-

tract. In Detroit-Kentucky Coal Co. v. Bickett Coal Co., 6 Cir., 251 F. 542, page 547, after holding that a coal company's agreement to issue stock to the president of its sales company and to give the sales company the exclusive right to sell coal, sales company to make certain advances, was entire and that the agreement to give exclusive sales agency was not enforceable where agreement to issue stock was illegal, the court said, "Had appellee offered to cancel the stock provision and to carry out the contract in every other respect, including the making of advances, a different case might be presented. But no such offer or suggestion has been made, and it cannot be assumed that without the stock provision appellee would have been content to make the advances, relying only upon the security of the Detroit company's ability to make repayment out of profits."

▇▇▇ The conduct of the parties in this case did not make a new agreement with the illegal part omitted. It is not alleged that any profits were shared after it became illegal to do so and it must be presumed that the parties complied with the law and shared no profits. All that happened after that, so far as appears, is that goods were ordered and shipped. Inasmuch as the contract became illegal, it is logical to suppose that both parties regarded it as at an end and that anything done after that was independent of the contract.

▇▇▇ Where performance is prevented by law, there is no liability for nonperformance. Lesser v. Gray, 8 Ga.App. 605, 70 S.E. 104; Macon & B. R. R. et al. v. Gibson et al., 85 Ga. 1(2), 11 S.E. 442, 21 Am. St.Rep. 135. In Fairmont Creamery v. Collier, 21 Ga.App. 87, 94 S.E. 56, it was held "An executory contract of employment of an agent, which contains a stipulation that a part of his commissions on sales shall be applied in payment of a pre-existing debt due to the principal, does not remain in effect after the agent's discharge in bankruptcy from such previous indebtedness, so that its continued compliance could be thereafter enforced; but so long as the parties, by subsequent acquiescence in its terms and performance of its conditions, elect to treat the contract as still subsisting, they are bound by its provisions".

But there the court said the agent could have repudiated the contract after the debt was discharged in bankruptcy but that the parties could agree to continue its operation and that the agent's remaining in the em-

ploy of the company and permitting his commissions to be applied to the debt amounted to a new agreement on the same terms as the old. The parties in the present case could not make a new agreement on the same terms as the old because the law prohibited and they could not make a new contract with different terms by doing nothing.

■ When the right to share in profits became illegal the defendant had a right to repudiate the contract because he did not agree to perform without sharing in the profits, and, even if it were possible by waiver to revive a contract in which part of the consideration is illegal, it could be done only by express agreement or by some clear, unequivocal and decisive act showing such purpose or acts amounting to an estoppel. On the subject of waiver generally, see 27 R.C.L. 904; 67 C.J. 289; City of Barnesville v. Stafford, 161 Ga. 588, 131 S.E. 487, 43 A.L.R. 1045. When the defendant became entitled to repudiate, the plaintiff had the same right and the contract was then wanting in mutuality and could not thereafter become binding except in the manner above indicated. The defendant could not take the undisclosed position in his own mind that he would wait and at some time in the future when business dealings between the parties had ceased, he would elect either to repudiate the contract or waive the illegal condition and thus make a new contract, whichever at that time might be more advantageous.

■ The defendant is not helped by Georgia Code, § 103-202 or Code, § 20-115, as to novation, or § 20-116, as to mutual temporary disregard of terms of contract. In Bearden Mercantile Co. v. Madison Oil Co., 128 Ga. 695, 58 S.E. 200, the court held that to do away with the stipulations in a contract, the circumstances must show a mutual intention of the parties to treat the stipulations as no longer binding and must be such as, in law, to make practically a new agreement. In Ball v. Foundation Company, 25 Ga.App. 126, 103 S.E. 422, it was held that in order for Code, § 20-116 to apply, the circumstances must be such as will in law imply a mutual new agreement, whereby new, distinct and definite terms are supplied in lieu of those provided in the original contract. See Jones v. Lawman, 56 Ga.App. 764, 771, 194 S.E. 416.

■ In this case there is nothing to show any new agreement or indeed any action under the contract at all after it became illegal. The facts alleged are just as consistent with the idea that both parties regarded the illegal contract as inoperative and that the orders for goods thereafter made and filled were not in pursuance of the illegal contract which had not and could not become operative without a new agreement.

■ When the profit sharing plan, which was a part of the consideration, became illegal, if the defendant had refused to buy his "requirements", even if the contract were otherwise enforceable, he could not have been compelled to go on with the contract, with the profit sharing plan omitted, without being compensated for the part of the consideration which failed. The measure of such compensation would have been precisely what defendant would have received under the plan itself. To omit the profit sharing plan and to compensate defendant to the extent that the consideration failed, would amount in substance to enforcing the whole contract including the illegal plan. Such evasion is not permitted by the statute.

■ The prohibition of the statute applies to both parties. It prohibits paying or receiving the profits. Neither party was permitted to perform the contract as written. The contract was, therefore, as heretofore pointed out, lacking in mutuality. Mutuality could not, by any conduct of the parties, be restored to the contract as written because neither could become bound, and mutuality could be restored to the contract with the illegal part eliminated only by a new agreement.

■ The discussion under this head up to this point has related to the illegality of the profit sharing plan. Now, the agreement to sell to defendant alone may itself be illegal. Under authorities before cited, a requirements contract which binds the seller to sell also binds the buyer to buy exclusively from the seller. Such agreements are void under 15 U.S.C.A. § 14 if they may substantially lessen competition or tend to create a monopoly. See Standard Fashion Co. v. Magrane-Houston Co., 258 U.S. 346, 42 S.Ct. 360, 66 L.Ed. 653; Oxford Varnish Corp. v. Ault & Wiborg Corp., 6 Cir., 83 F.2d 764; Carter Carburetor Corp. v. Federal Trade Commission, 8 Cir., 112 F. 2d 722. That question, however, cannot be determined on this motion because it does not appear what effect the contract would have.

**734**

The first ground of the cross action fails to state a claim upon which relief can be granted.

3. Violation of Clayton Act, as amended.

The second ground of the cross-action demands triple damages under 15 U.S.C.A. § 15.

15 U.S.C.A. § 13 makes unlawful, among other things, discrimination in prices between purchasers where the discrimination is in commerce and may substantially lessen competition or tend to create a monopoly or to injure, destroy or prevent competition with any person who grants or knowingly receives the benefit of such discrimination, or with customers of either of them; provided sellers are not prevented from selecting their own customers. 15 U.S.C.A. § 13(a) makes it unlawful, among other things, to sell goods in any part of the United States at prices lower than those exacted elsewhere, for the purpose of destroying competition or eliminating a competitor, or to sell goods at unreasonably low prices for the purpose of destroying competition or eliminating a competitor.

(a) The sales here complained of are sales by the local branch store to the general trade in Macon. Such sales are not made in interstate commerce. Kehrer v. Stewart, 197 U.S. 60, 25 S.Ct. 403, 49 L. Ed. 663; Jewel Tea Co. v. Williams et al., 10 Cir., 118 F.2d 202; Atlantic Coast Line Railroad v. Standard Oil Co., 4 Cir., 12 F. 2d 541, 60 A.L.R. 1456; Lipson v. Socony Vacuum Corp. et al., 1 Cir., 87 F.2d 265; Ward Baking Co. v. Federal Trade Comm., 9 Cir., 264 F. 330; Winslow et al. v. Federal Trade Comm., 4 Cir., 277 F. 206; Corey et al. v. Independent Ice Co. et al., D.C., 207 F. 459; Bunte Bros. v. Federal Trade Commission, 7 Cir., 110 F.2d 412, affirmed 312 U.S. 349, 61 S.Ct. 580, 85 L.Ed. 881.

(b) Purchasers from plaintiff for their own use were probably not in competition with defendant, who bought for resale, but if they were, the cross action does not allege any discrimination in prices between defendant and such purchasers. So far as appears, all purchasers in Macon, including defendant, can buy from plaintiff at the same prices. See Boss Mfg. Co. v. Payne Glove Co., 8 Cir., 71 F.2d 768; General Shale Products Corp. v. Struck Const. Co. et al., D.C., 37 F.Supp. 598; Mennen Co. v. Federal Trade Commission, 2 Cir., 288 F. 774, 30 A.L.R. 1120.

(c) The cross action does not allege that plaintiff sold in Macon at prices lower than elsewhere, in order to eliminate defendant as a competitor; nor does it allege that plaintiff sold at unreasonably low prices to eliminate defendant. It alleges that plaintiff sold its own products at less than the prices at which they had been previously sold in Macon and at prices less than defendant, as local dealer, could sell them profitably, and thereby drove defendant out of the Macon field as a competitor. Under the act plaintiff could refuse to sell to defendant at any price, but even that is not alleged. See Arthur v. Kraft-Phenix Cheese Corp., D.C., 26 F.Supp. 824. Those allegations do not show any violation of the law upon which defendant relies.

The second ground of the cross action sets out no valid claim for relief.

The plaintiff's motion for judgment will be granted.